# United States Court of Appeals
## For the First Circuit

---

No. 04-2174

KHEANG HONG LONG,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, <u>Chief Judge</u>,
Lynch and Howard, <u>Circuit Judges</u>.

---

<u>Thomas Stylianos, Jr.</u> on brief for petitioner.
<u>Jeffrey D. Martino</u>, Attorney, Office of Immigration
Litigation, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil
Division, and <u>Linda S. Wernery</u>, Senior Litigation Counsel, Office
of Immigration Litigation, on brief for respondents.

---

September 6, 2005

---

**LYNCH**, **Circuit Judge**.  The petitioner, Kheang Hong Long, a native and citizen of Cambodia, seeks review of the denial of his application for asylum.  The Immigration Judge (IJ) found that Long was not credible, and that he failed to establish past persecution or a well-founded fear of future persecution.  The Board of Immigration Appeals ("BIA") affirmed and adopted the IJ's decision. We affirm the BIA and deny the petition for review.[1]

## I.

Long entered the United States as a visitor for pleasure on February 16, 2001.  Long timely filed an application for asylum, claiming he had been a victim of past persecution and had a well-founded fear of future persecution because of his activities with the Sam Rainsy Party (SRP), an opposition party to the ruling Cambodian People's Party (CPP).  In his application for asylum,[2] Long recounted a number of events of persecution.  Long wrote that on March 30, 1997, he was injured by a hand grenade while attending a protest against the Cambodian government.  In July of the same year, Long stated, he left Cambodia for Thailand after the Cambodian government attacked opposition groups during an attempted

---

[1] Alberto Gonzales was sworn in as Attorney General of the United States on February 3, 2005.  We have substituted him for John Ashcroft, previous holder of that office, as the lead respondent.  See Fed. R. App. P. 43(c)(2).

[2] Long also asked for withholding of removal and protection under the Convention Against Torture.  The IJ denied relief on both these grounds.  Long did not appeal these denials, and therefore they are not at issue in this case.

coup d'etat. He returned to Cambodia five months later. Long claimed that he was then arrested by the CPP on December 31, 2000, while recruiting new members to the SRP and was placed in jail for 10 days, where he was beaten and interrogated. According to Long, upon his release his tormentors warned him that he would be killed if he continued to support the SRP. He also stated that he had owned a restaurant in Cambodia but that, at some unspecified time, the CPP "forced [him] to close [it] because of persecution and intimidation." Long also stated that his wife and two children had "gone to stay with [his wife's] sister" and that they had to "stay out of the public eye for fear of being recognized by the government."

On January 2, 2002, Long was placed under oath and interviewed, through a translator, by an asylum officer (AO). At this interview Long recounted many of the details above, including the fact that he joined the SRP after high school in 1993. After this interview, the AO denied Long's asylum application and referred the case to an IJ for a merits hearing. In the assessment to refer memo, the AO noted a number of inconsistencies in Long's testimony. Long could not remember significant details about the SRP, such as whether Sam Rainsy had formed his own party at the time Long joined it, or the original name of the party. Long also could not remember when authorities threatened to burn down his restaurant. He first stated that government authorities threatened

-3-

to burn down his restaurant on January 10, 2001 and then stated that it was in February of 2001. When asked to explain, Long stated that they in fact came twice, and then stated he was not sure because he was confused. Finally, Long was unable to remember any details about his imprisonment other than the beatings. The asylum officer concluded that Long "was unable to provide a reasonable explanation for this lack of detail and inconsistencies which are material because they concern his claimed political activities and abuse by the authorities."

The Immigration and Naturalization Service[3] began removal proceedings against Long on January 9, 2002. During a merits hearing before an IJ, the assessment to refer memo was introduced into evidence by the government, without objection from Long's attorney. Long stated that he had run his restaurant in Cambodia until December of 2000. However, the passport Long used to come to the United States, which he obtained in November of 2000, listed his occupation as "salesman." When asked to explain what exactly he sold, Long said "I sell everything that's in restaurant which is the orange juice and coke and the beers and the spring waters and food and noodles." Later, when questioned by the judge about the present location of his wife and children, Long reiterated that his wife and children were "now liv[ing] in Phnom Penh with my . . .

---

[3] The functions of the INS were subsequently subsumed in the Department of Homeland Security.

sister-in-law," and provided their address.  The government attorney then questioned Long:

> Q:    Isn't that your address that you just said for your wife and children . . . on your passport, sir, issued in 2000?
>
> A:    Yes.
>
> Q:    So your wife and children are still living in your house in Phnom Penh, correct?  It's a yes or no question.
>
> A:    Before that . . . escaping from place to place and living house to house and because they don't have the money to rent, so finally she end up came back to old house and this is what happened.
>
> Q:    So, yes, she lives in the same house you lived in when you left Cambodia now, right?
>
> A:    Yes.

Later, when Long offered his SRP membership card into evidence, he stated, "I received the cards [sic] in 1998 when I joined the party."  But later when asked more specifically when he joined the SRP, Long stated "I joined the Sam Rainsy party since I was in school back in 1995."  When asked to explain the inconsistency, Long once again resorted to evasive maneuvers: "The card issued to me in 1998, . . . but I was an active member of Sam Rainsy party since 1995 when I was in school."  These responses were all inconsistent with Long's statement to the asylum officer that he had been a member of the SRP since 1993.

The IJ denied Long's application for asylum in an oral decision on May 8, 2003, finding that Long was not credible and

-5-

therefore had not made a showing of past persecution or a well-founded fear of future persecution. First, the IJ cited the discrepancies found by the AO, as detailed in the assessment to refer. Second, the IJ pointed to the discrepancy between Long's passport, issued in November of 2000, which lists his occupation as "salesman," and Long's testimony that he runs a restaurant. Third, the IJ pointed to Long's admitted lies in his visa application as to whether his restaurant was still open and his status as a visitor for pleasure. Finally, the IJ noted that Long had provided no evidence corroborating the story of his arrest by the CPP. Long appealed to the BIA, which adopted and affirmed the IJ's decision, making it the final agency determination for the purposes of appellate review. See Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). Long then petitioned this court for review solely as to the asylum claim.

## II.

This case turns on the adverse credibility decision by the IJ. We review factual findings and credibility determinations under the deferential substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Singh v. Gonzales, 413 F.3d 156, 159 (1st Cir. 2005). The IJ's determination must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). The deference to

the IJ is not unlimited, however. The IJ must provide specific reasons for its determination that, in turn, are supported by the evidence. See Akinwande v. Ashcroft, 380 F.3d 517, 522 (1st Cir. 2004). As detailed above, the IJ did precisely this.

Long makes two arguments in response. First, Long faults the IJ's reliance on the fact that he had lied on his visa application, and cites Matter of Pula, 19 I. & N. Dec. 467 (BIA 1987) in support. However, Long's "circumvention of orderly refugee procedures" was not the "the sole or even primary focus of the IJ," Albathani, 318 F.3d at 374 n.5, and therefore Long's argument is unavailing. Second, Long argues that the IJ erred because he did not make "independent findings" but "merely concur[red]" with the asylum officer's assessment to refer. This argument also fails. In addition to the AO's report, the IJ provided a number of specific, independent reasons supporting his decision.[4] Furthermore, even a cursory glance through the facts recounted above reveals a number of serious discrepancies among Long's statements in his asylum application, to the asylum officer, and before the IJ. Thus, based on this record, there was substantial evidence supporting the IJ's determination that Long

---

[4] In Singh v. Gonzales, 403 F.3d 1081, 1089-90 (9th Cir. 2005), the court held that an IJ's reliance on an assessment to refer is inappropriate under certain circumstances. This case does not present the same issue since the IJ here provided a number of valid reasons besides the discrepancies noted in the assessment to refer.

was not credible, and we cannot say a contrary conclusion is compelled.

The petition for review is **denied**.