NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0012n.06
Filed: January 3, 2006

No. 04-4056

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| HANE BEGU, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) **ON PETITION FOR REVIEW FROM** |
| | ) **A DECISION OF THE BOARD OF** |
| ALBERTO R. GONZALES, Attorney | ) **IMMIGRATION APPEALS** |
| General, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

Before: COLE and DAUGHTREY, Circuit Judges; BARZILAY, Judge.[*]

BARZILAY, Judge. Hane Begu seeks review of an order issued by the Board of

Immigration Appeals ("BIA") affirming and adopting with additional comments the Immigration

Judge's denial of her request for asylum, withholding of removal, and protection under the UN

Convention Against Torture ("CAT"). An immigration judge ("IJ") denied her petition, finding

that Begu lacked credibility. Begu challenges these determinations, arguing that she was

persecuted due to her membership in an opposition political party and that she has a well-

founded fear of future persecution. Although some of the IJ's incredibility findings are not

supported by substantial evidence, we sustain the IJ's decision primarily based on Begu's failure

to provide corroborating evidence for her claims.

---

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International
Trade, sitting by designation.

**Background and Procedural History**

Petitioner Hane Begu, a native and citizen of Albania, entered the United States in March 2002 using a false passport. She timely applied for political asylum, claiming that her life was threatened by the Socialist Party government because of her and her family's political activity with the Democratic Party ("DP") and its Youth Forum. Following the denial of her claim by the Immigration and Naturalization Service, removal proceedings were initiated against Begu pursuant to 8 U.S.C. § 1227(a)(1)(A) for failure to possess a valid entry document. Prior to the IJ hearing, Petitioner amended her application for asylum to seek withholding of removal and protection under CAT as well.

Begu premises her asylum claim on political persecution in Albania. She claims that she and her family participated in the democratic movement during the nineties. In March 1993, at the age of seventeen, she allegedly became a member of the Youth Forum of the Democratic Party and subsequently participated in DP demonstrations with her parents. Admin. R. 319. She claims that after the Socialist Party returned to power in June 1997, it severely persecuted her and her family. Begu described instances where she was beaten, arrested, and detained for two days in prison for her participation in a DP demonstration. She also testified that a local city council member of Tirane from the Socialist Party accosted her at her store and threatened to harm her and her family unless she ceased her political activities. On New Year's Eve 2000, Begu claims that two men attacked her as she was closing her shop, told her to abstain from her DP political activities, and threatened to destroy her and her family. Admin. R. 321. She finally

fled Albania after her shop was burned down in January 2000. Begu linked these instances of mistreatment, including the burning of her store, to her membership in the DP Youth Forum and DP.

At the hearing, the IJ considered Begu's testimony and corroborating evidence, including 1) an article from an Albanian newspaper describing Begu's flight from Albania in a story about persecution of democrats; 2) two attestations regarding her membership in the DP and DP Youth Forum; and 3) the testimony of an Albanian scholar and history professor describing the climate of political prosecution of DP members. The IJ also considered her asylum application assessment by an asylum officer who found Begu's statements inconsistent. The asylum officer noted that Begu told him that she belonged to the DP Youth Forum and never joined the mainstream DP, while one of the attestations indicated that she was a DP member.

The IJ denied Begu asylum after finding her testimony and corroborating evidence incredible. The BIA affirmed this finding and adopted the IJ's oral opinion with one exception: it disagreed with the IJ's speculation that a young, petite female could not participate in a political demonstration.

**Analysis**

Given jurisdiction over this case pursuant to 8 U.S.C. § 1252(a)(1), the Court reviews the IJ's opinion directly where it is explicitly adopted by the BIA. *See Denko v. INS*, 351 F.3d 717, 728 (6th Cir. 2003). In asylum cases, petitioners bear the burden of demonstrating that they qualify as refugees as a result of past persecution or a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A). Credibility determination forms the first step in an IJ's asylum

3

claim evaluation. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). In reviewing an IJ's adverse credibility determination, this Court evaluates whether "substantial evidence" supports the decision. *Id.* A reversal of the IJ's credibility determination is required if "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citing 8 U.S.C. § 1252). While an IJ's finding receives substantial deference, it must be supported by specific reasons that "bear a legitimate nexus to the finding." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Importantly, "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim" and cannot be based on irrelevant inconsistencies. *Id.* (citations omitted).

An asylum seeker meets her burden "by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). While credible testimony is sufficient to meet this burden pursuant to 8 C.F.R. § 208.13(a), this Court has upheld the BIA's requirement that "otherwise-credible applicants . . . supply corroborating evidence in order to meet their burden of proof." *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (6th Cir. 2001). In addition, the recent Real ID Act amended 8 U.S.C. § 1252(b)(4) to require that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."[1] Pub. L. No. 109-13, Div. B, 119 Stat. 231, § 101(e)

---

[1]This provision applies to the instant case. *See* Real ID Act § 101(h)(3) ("The amendment made by subsection (e) shall take effect on the date of the enactment of this division and shall apply to all cases in which the final administrative removal order is or was issued before, on, or after such date.").

(2005).

On appeal, Petitioner challenges every factual finding made by the IJ as unsupported by the record evidence and reflective of the IJ's personal beliefs and conjectures. The Court agrees that some of the IJ's credibility findings are not cogently supported by the record evidence. For example, the IJ's finding that the newspaper article was incredible due to a mere possibility that Begu could have paid for its publication lacks a firm basis because the record does not demonstrate that the article was ordered for a fee. Similarly, the IJ's conclusion that the attestation letter stating that Begu was a DP member detracted from her testimony because it was a form letter without detail is not substantiated. The Court also disagrees with the IJ's conclusion that an Albanian governmental official would not harass Begu since the IJ could surmise a different motive for the official's actions. *See Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir. 1995) ("[T]he BIA failed to recognize that persecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements have been satisfied.").

Nevertheless, the IJ adequately identified several deficiencies in Begu's application supported by the record evidence. Primarily, her claim suffers significantly for her failure to produce corroborating evidence for alleged instances of mistreatment. The IJ discredited Begu's testimony about the burning down of her shop because she could not provide any supporting documentation, such as police reports or photographs. Similarly, the IJ disbelieved her testimony about the assassination of her fiancé because she provided no corroborative evidence. The IJ also questioned why Begu's sister, who lived only 45 minutes away from the hearing,

could not come to testify on her behalf.

This Court has upheld adverse credibility findings based on lack of corroborating evidence in cases where it was reasonable to expect corroboration and where the petitioner could not offer a reasonable explanation for the failure to produce such evidence. *See, e.g.*, *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) ("The IJ also did not err in using [the petitioner's] failure to provide corroborating evidence as further support for the negative credibility finding" where the petitioner failed to provide a reasonable explanation for 1) calling neither his father nor mother as corroborating witnesses, even though they lived in the area and appeared to have firsthand knowledge of relevant events; 2) not providing any proof that he had been a member of the Albanian Democratic Party, even though his testimony suggested that he could have provided such proof; and 3) not offering to speak Albanian or otherwise provide any proof that he was in fact ethnically Albanian.). This rule was codified with the enactment of the Real ID Act amending 8 U.S.C. § 1252(b)(4). *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231.

Petitioner explains that she had not procured documentary evidence due to the circumstances of her flight from Albania. She claims that the IJ could not expect her to produce photos, a police report, or other documents to verify the arson of her store because she could have obtained such documents only if she had returned to Albania or had thought to obtain them as she emigrated in anticipation of the asylum claim requirements. *Pet'r Br.* 32. Finally, Begu explained that her sister could not come because of a stomach ache. These explanations do not adequately establish her inability to furnish documentary evidence to corroborate her claims. Particularly, the Court notes that Petitioner did not furnish any corroboration from a family

6

member, which could be produced in the form of affidavits or letters. *See Dorosh*, 398 F.3d at 382-83. Therefore, the Court upholds the IJ's conclusion that certain significant instances of persecution require corroborative evidence.[2] *See id.* (finding it reasonable to expect that petitioner in contact with his mother and friends produce affidavits corroborating his ill treatment in Ukraine).

In addition to Begu's failure to produce corroborating evidence, the IJ identified other deficiencies in her case. The IJ considered the asylum officer's observation that Begu testified that she never joined the mainstream DP and was only a member of its Youth Forum. Meanwhile, Begu offered two attestations – one stating that she is a DP member and the other that she was a Youth Forum member. She attempted to explain this discrepancy by claiming that in Albania the connection between the Youth Forum and the DP is blurred and that the government often targets Youth Forum members because of their affiliation with the DP. In addition, the IJ found that Begu's description of her two-day detention in 1998 following her participation in a DP demonstration lacked detail, as she testified that she could neither remember how many times she was beaten nor describe the psychological mistreatment she endured.

---

[2] The Court, however, specifically notes that Petitioner's failure to provide medical records related to the beatings during her September 1998 detention does not constitute a reasonable basis for a finding of incredibility since the IJ's conclusion that the beatings necessitated a trip to the hospital is not supported by substantial evidence. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000) (reversing IJ's adverse credibility determination where petitioner testified that beating he received did not cause him to bleed). Not all beatings leave physical marks, and the inability of lay persons to identify such evidence alone is not sufficient to determine that the alleged acts never occurred.

7

Insufficient detail along with discrepancies or inconsistencies in a petitioner's testimony constitutes a basis for finding such testimony incredible. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) ("Under BIA rulings, credibility encompasses not just consistency but also plausibility and sufficient detail."); *Long v. Gonzalez*, __ F.3d __, 2005 WL 2140562, at *3 (1st Cir. Sept. 6, 2005) (denying asylum application where petitioner could not remember significant details about his membership in political party, when authorities threatened to burn down his restaurant, or details about his imprisonment other than beatings, and also failed to provide reasonable explanation for this lack of detail and inconsistencies material to his asylum claim). The discrepancy regarding Begu's membership in the DP and DP Youth Forum alone would not be sufficient to find her incredible. *See Sylla*, 388 F.3d at 926 ("If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'") (internal citations omitted). However, her failure to provide more detail renders her testimony incredible. Begu presented the two-day detention incident as one of several significant instances of political persecution, and as a critical component of her claim, it requires detail.

In conclusion, the IJ's determination that Petitioner failed to furnish reasonable corroborating evidence, such as verification of the burning of her shop or her fiancé's death, supports the IJ's overall credibility determination. *See Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003) ("So long as one of the identified grounds [for the adverse credibility finding] is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution, we are bound to accept the [IJ's] adverse credibility finding."). Additionally, the IJ's findings that

8

Begu's testimony about her detention in September 1998 lacked detail and that a discrepancy existed in Petitioner's testimony to the asylum officer provide further basis for the IJ's finding. Therefore, we sustain the IJ's adverse credibility determination and DENY the petition for review of the BIA's decision.