**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 06-2531

VALTER PRELA,

Petitioner,

v.

PETER D. KEISLER,*
ACTING ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, <u>Circuit Judge</u>,
Selya, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

---

 <u>Andrew P. Johnson</u> and <u>Law Offices of Andrew P. Johnson</u>, on brief for petitioner.
 <u>Andrew Oliveira</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Richard M. Evans</u>, Assistant Director, on brief for respondent.

---

October 19, 2007

---

* Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzáles as respondent.

**TORRUELLA**, **Circuit Judge**.  On October 4, 2006, the Board of Immigration Appeals ("BIA") adopted and affirmed the decision of an Immigration Judge ("IJ") rejecting Petitioner Valter Prela's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  The IJ found significant inconsistencies in Prela's story, but Prela did not address those inconsistencies before the BIA.  Prela now appeals the BIA's decision, arguing that the IJ's credibility finding is not supported by the record, and that the IJ failed to consider whether Prela is eligible for CAT relief.  After careful consideration, we deny the petition for review.

## I. Background

Prela is a native and citizen of Albania.  His claims for asylum, withholding of removal, and CAT relief stem from his and his family's support of the Democratic Party in Albania. Particularly, Prela alleges that his family has suffered "severe and longstanding persecution at the hands of the Albanian authorities."  His family was banished from their village after Prela's father spoke out against the Communist Party then in power. His father, a leader in the Democratic Party, was eventually killed in 1993.

Prela also claims that his younger brother, Arjan, was later murdered by Socialists after he attempted to make a report to a Democratic Party newspaper denouncing the corruption of the

Socialist government.  Authorities, however, apparently ruled the death an accident.  Shortly after Arjan's death, the family changed their "well-known, especially, among the Socialist Party, last name"[1] to "Prela."

The deaths of his father and brother only spurred Prela's support of the Democratic Party, despite a forty-eight hour detention in September 1998, and another "stop" by the Socialists on the street.  Prela then became a member of the election staff for the June 24, 2001 election.  His duties included organizing meetings for the Democratic Party candidates and speaking about the benefits of democratic government.  During the election campaign, Prela claims that he was threatened, stopped, and assessed fines.

The most serious incident Prela describes occurred on the day of the election.  Prela explains that he witnessed Socialists "caus[ing] chaos" at his assigned polling station. When he reported the improper activities to the station chairman, a Socialist, he was asked to leave the station.  He refused and was dragged away. On his way home, he was severely beaten by "three masked men [who] came from [a] police van."  When he attempted to report the beating to the police, he was threatened for filing a "false accusation."

On June 30, 2001, Prela participated in a demonstration against the Socialist Party's corruption related to the election.

---

[1]  It is unclear from the record and the parties' briefs exactly what Prela's original last name was.

-3-

He was hit by police with a rubber stick, taking several days to recover.

In July 2001, Prela was summoned to court regarding his accusation against the police, but he decided not to appear. He received another summons in September 2001. Shortly thereafter, fearing for his safety, he decided to leave Albania.

Prela did not seek asylum upon his entry into the United States. Rather, he waited until he was issued a Notice to Appear on May 23, 2002, charging him with being removable.

The IJ found significant inconsistencies in the evidence presented in support of Prela's story. For example, Prela testified that his father was killed by a group of Socialists and ex-communists while giving a speech in Likmetaj, and Prela's mother stated in an affidavit that his father was killed during a meeting of the Democratic Party. The Democratic Party, however, wrote a letter stating that Prela's father was killed in the town of Ishem by a group of criminals. In addition, Prela stated that he changed his last name to "Prela" on October 12, 2000, but his Democratic Party membership card, issued in March 1996, bears the name "Prela." The IJ also noted that he was unclear as to how changing his name would make Prela safer, given that he worked in a store bearing the family's real last name. Similarly, Prela testified that he went into hiding after the summonses were issued, though he was "hiding" in his own home and still working at the store.

The most notable inconsistency, according to the IJ, was Prela's testimony regarding his June 24, 2001 arrest and beating. Prela testified before the judge that he spent two days in the hospital after his beating. In his affidavit, however, Prela had stated that he was sent home after just a few hours. Moreover, Prela had given three different times -- 4:30 p.m., 7:30 p.m., and 11:00 p.m. -- for when the incident with the police allegedly occurred.

Based in part on these inconsistencies, the IJ found that Prela had not borne the burden of proof that he was the victim of past persecution, that he had a well-founded fear of future persecution, or that it was more likely than not that he would be persecuted or tortured if returned to Albania. As a result, the IJ denied Prela's claims and ordered him removed.

The BIA upheld the IJ's denial of relief to the extent that it was based upon an adverse credibility finding.[2] The BIA stated that it found no reason to disturb the IJ's adverse credibility determination, noting that on appeal Prela had not addressed the "significant inconsistencies between the asylum application, testimony and documentary evidence on matters which go to the heart of the claim."

---

[2] The IJ had also found that "[e]ven viewing [Prela's] testimony in the best possible light to him, . . . what he has actually shown is that while participating in demonstrations which ended up violently, that he was abused by police."

II. **Discussion**

While we normally review the BIA's decision as the final agency order, we look to the IJ's decision to the extent it was adopted and affirmed by the BIA. Simo v. Gonzáles, 445 F.3d 7, 11 (1st Cir. 2006). We review the IJ's findings, including his credibility determination, to determine whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Bocova v. Gonzáles, 412 F.3d 257, 262 (1st Cir. 2005) (quoting INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)). We will not reverse unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252 (b)(4)(B).

First, Prela argues that the BIA erred in affirming the IJ's adverse credibility finding because the IJ's finding is not supported by substantial evidence in the record when viewed as a whole. We disagree. The IJ specifically described the inconsistencies upon which he relied, and those inconsistencies are supported by the record. See Long v. Gonzáles, 422 F.3d 37, 40 (1st Cir. 2005) ("The IJ must provide specific reasons for its determination that, in turn, are supported by the evidence."). Moreover, those inconsistencies are substantial and go to the heart of Prela's claims of persecution and torture. See Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999) ("[A]n adverse credibility determination cannot rest on trivia but must be based

on discrepancies that involved the heart of the asylum claim." (internal quotation marks omitted)).  In particular, the strongest evidence in support of Prela's claims concerns his June 24, 2001 arrest and beating, but his contradictory testimony casts into substantial doubt not only the extent of the incident but also the veracity of Prela's statements.

Prela argues in this court that the contradictory statements noted by the IJ are in fact not inconsistent.  With respect to his father's death, he points out that the ex-communists whom he testified assassinated his father are criminals, as described by the Democratic Party's letter.  He also explains that he joined the Democratic Party in 1996, explaining the "issue date" on his membership card, but that the particular card with his new last name was issued much later, after he had changed his name to Prela.  We note first that Prela apparently did not make these arguments before the BIA, and so they are waived.  Molina de Massenet v. Gonzáles, 485 F.3d 661, 664 (1st Cir. 2007) ("[A]rguments not raised before the BIA are waived due to a failure to exhaust administrative remedies.").  In any event, Prela still has not explained the more significant inconsistencies regarding the June 2001 incident.

Second, Prela argues that the IJ erred in denying him relief under the CAT because he did not consider the CAT claim separate from the asylum claim.  Prela is incorrect, however.  It

is clear from the IJ's decision that he considered whether Prela had satisfied the standard for CAT relief. He correctly identified Prela's burden of proof, stating "that it is more likely than not that he would be tortured if removed to the proposed country of removal," and that "[t]he torture must be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." See Ang v. Gonzáles, 430 F.3d 50, 58 (1st Cir. 2005); 8 C.F.R. § 208.16 (c)(2). He then based his denial of relief on the inconsistencies in the record previously described, finding that Prela's testimony did not establish that it was more likely than not that he would be tortured if returned to Albania. The record does not compel us to conclude otherwise. See Stroni v. Gonzáles, 454 F.3d 82, 90 (1st Cir. 2006).

### III. Conclusion

For the reasons enumerated above, we deny the petition for review.

**Denied**.