# United States Court of Appeals
## For the First Circuit

No. 03-2722

DR. ERNESTO TORRES-ARROYO AND MARCIAL BERRÍOS-CINTRÓN,

Plaintiffs, Appellants,

v.

DR. JOHN V. RULLÁN, ETC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Francisco R. Gonzalez, with whom F.R. Gonzalez Law Office was on brief, for appellants.
Eduardo Vera Ramírez, with whom Roberto Sánchez Ramos, Secretary of Justice, Salvador Antonetti Stutts, Solicitor General, Eileen Landrón Guardiola, Courtney R. Carroll, and Landrón & Vera, LLP were on brief, for appellees.

January 13, 2006

**SELYA**, **Circuit Judge**.  Although a jury determined that political discrimination spurred the non-renewal of the plaintiffs' government contracts, it awarded no damages.  Dissatisfied with this Pyrrhic victory, the plaintiffs appealed.  We conclude that the plaintiffs have waived virtually all of their claims of error and that their only properly preserved claim lacks merit.  Consequently, we affirm the judgment below.

## I.  BACKGROUND

The record reveals that the plaintiffs, Dr. Ernesto Torres-Arroyo (Torres) and Marcial Berríos-Cintrón (Berríos), are aligned with the New Progressive Party (NPP).  During a period when the NPP held the reins of power in Puerto Rico, Torres and Berríos became contract employees of the Correctional Health Program (CHP), a government agency.  Torres served as the CHP's executive director and Berríos as an accountant.

During the times material hereto, the United States District Court for the District of Puerto Rico was exercising supervisory authority over various aspects of the Puerto Rican correctional system, including the CHP.  This supervision came about as a result of a long-running inmate class action, presided over by Judge Pérez-Giménez, familiarly known as the Morales Feliciano case.[1]  When Dr. Aida Guzmán resigned her position as

_____

[1]The reader who hungers for additional detail concerning this class action should consult the steady stream of judicial opinions in the Morales Feliciano case, dating back to 1979.  See, e.g.,

chief health care coordinator (CHCC), effective March 31, 2000, Judge Pérez-Giménez, acting at the instance of the inmate class in an order entered April 19, 2000, temporarily assigned some of Guzmán's duties to Torres. Those duties included the responsibility for executing and renewing certain CHP personnel contracts.

Torres and Berríos each signed a renewed professional services contract with the CHP on July 1, 2000. In accordance with the usual custom, each agreement covered a one-year period. Despite the fixed term and the stated expiration date (June 30, 2001), each agreement provided for unilateral termination by either party on thirty days' notice.

A new administration came to power when a gubernatorial candidate endorsed by the Popular Democratic Party (PDP) prevailed in the November 2000 general elections. On February 6, 2001, Dr. Pedro Ramos Hiraldo, the acting Secretary of Health, wrote to Torres informing him that the Department of Health was exercising its right to terminate his contract, effective thirty days hence. That plan was foiled, however, when the inmate class opposed the termination (due to the vacancy that then existed in the CHCC position) and Judge Pérez-Giménez, on February 8, 2001, issued a

Morales Feliciano v. Rullán, 378 F.3d 42 (1st Cir. 2004); Morales Feliciano v. Parole Bd. of P.R., 887 F.2d 1 (1st Cir. 1989); Morales Feliciano v. Rosselló González, 13 F. Supp. 2d 151 (D.P.R. 1998); Morales Feliciano v. Romero Barcelo, 497 F. Supp. 14 (D.P.R. 1979).

temporary restraining order (the TRO) preventing the Secretary from removing Torres. <u>Morales Feliciano</u> v. <u>Calderón</u>, No. 79-4 (D.P.R. Feb. 8, 2001) (unpublished). The judge set a hearing on preliminary injunction for February 20, 2001.

While the TRO was in force, Dr. John Rullán took office as Secretary of Health. Prior to the scheduled hearing, Rullán's representatives met with the lawyers for the inmate class. On February 20, the parties jointly proposed to Judge Pérez-Giménez that Dr. Guzmán be reappointed as CHCC and resume her former duties (including those that Torres had temporarily assumed). In that capacity, Guzmán would be responsible for evaluating Torres's performance.

Despite agreeing on these salient points, the parties were unable to settle upon a complete job description for Guzmán. Judge Pérez-Giménez indicated that he would approve Guzmán's reappointment, but asked that the parties submit their versions of her overall job description by March 2, 2001. To provide breathing room, the judge extended the TRO until March 9, 2001.

When the parties were unable to reach an agreement by the March 2 deadline, Judge Pérez-Giménez took the bull by the horns. He allowed the TRO to expire and delineated the particulars of Guzmán's position in an order entered May 23, 2001.[2] Eight days

---

[2]The Secretary appealed the May 23 order. Concluding that the order did not modify a previous injunction but merely clarified the CHCC's role, we dismissed the appeal for want of appellate

-4-

later, Guzmán, acting in her official capacity as the CHCC, wrote to both plaintiffs and informed them of her decision not to renew their professional services contracts. The contracts expired on June 30, 2001.

The plaintiffs thereafter sued Rullán and Guzmán in their personal and official capacities under the First and Fourteenth Amendments and 42 U.S.C. § 1983. They maintained that the non-renewals were motivated by political discrimination and executed in violation of their due process rights. The new case was assigned to Judge Cerezo.

On October 10, 2002, Judge Cerezo dismissed the due process claims. She relied on the plain language of the one-year contracts and held that the plaintiffs had no property interest in their government positions beyond the expiration date stipulated in the contracts. Relatedly, she rejected the plaintiffs' contention that they had a property interest in continued employment by reason of court orders issued in the Morales Feliciano case. She noted that the TRO had expired on March 9, 2001; that it never affected Berríos; and that, in all events, Judge Pérez-Giménez had not granted any relief that would have created an expectancy of continued employment on the part of either plaintiff.

---

jurisdiction. Morales Feliciano v. Rullán, 303 F.3d 1, 10 (1st Cir. 2002).

-5-

The case proceeded solely on the plaintiffs' political discrimination theory. The plaintiffs indicated that they planned to offer documents from the <u>Morales Feliciano</u> case, including the order of April 19, 2000, the TRO, and the transcript of the hearing held on February 20, 2001. On the defendants' motion, Judge Cerezo, in an in limine order, ruled the documents inadmissible.

The plaintiffs persisted. They filed a motion for clarification, arguing that the <u>Morales Feliciano</u> documents provided relevant background information, constituted circumstantial evidence vis-à-vis their political discrimination claims, and demonstrated that Guzmán did not have the legal authority to terminate their employment. Judge Cerezo flatly rejected the last of these claims but acknowledged that the documents might constitute relevant background information for the political discrimination claims. Judge Cerezo nonetheless worried that, if admitted wholesale, the documents would confuse the issues and risk unfair prejudice. Steering a middle course, she reiterated that the documents would be excluded as full exhibits but allowed the plaintiffs to refer to their contents at trial, as long as they acknowledged that Torres's position enjoyed no special legal protection once the TRO had expired.

Trial commenced on October 24, 2003. Notwithstanding the court's pretrial ruling that Guzmán had plenary authority, as the CHCC, to decide whether to renew their contracts, the plaintiffs

tried to argue on no fewer than ten occasions that the Morales Feliciano documents established the contrary. In an effort to curb possible jury confusion resulting from the plaintiffs' repeated misinterpretations about what had been decided in the Morales Feliciano case, Judge Cerezo summarized the relevant portions of the proffered Morales Feliciano documents for the jury.

Undeterred, plaintiffs' counsel continued to question Guzmán's authority and reiterated, time and again, his request to admit as full exhibits the Morales Feliciano documents. Judge Cerezo repeatedly rejected these importunings and chastised plaintiffs' counsel for attempting to mislead the jury. She also threatened to impose sanctions should the lawyer continue to voice improper arguments before the jury.

At the close of the plaintiffs' case in chief, Judge Cerezo granted Rullán's motion for judgment as a matter of law. See Fed. R. Civ. P. 50(a). That left Guzmán as the sole defendant. In her end-of-case instructions, Judge Cerezo again summarized the Morales Feliciano documents. She emphasized that, by May 31, 2001, Guzmán occupied the CHCC position and possessed all the powers of that office.

Shortly after the jurors began to deliberate, they requested the Morales Feliciano documents. Judge Cerezo declined the request but, in open court, reread her summary of those documents. The jury, responding to a special verdict form,

ultimately found Guzmán guilty of political discrimination, but awarded the plaintiffs "$0.00" in damages. Although the plaintiffs asked the court to poll the jurors (which request the court honored), they did not raise any question of verdict inconsistency. Accordingly, Judge Cerezo discharged the jury without further inquiry. On November 24, 2003, the court entered judgment on the jury verdict.

That same day, the plaintiffs filed a notice of appeal. Buried deep within that document was a reference to a "Petition for a New Trial for Compensatory and Punitive damages for a contradictory Jury Verdict." The plaintiffs never filed a motion for a new trial with the district court within the prescribed ten-day period. See Fed. R. Civ. P. 59(b). On May 1, 2005 — over seventeen months later — they attempted to rectify this omission by filing a paper entitled "Plaintiffs' Amended Motion for a New Trial." Four days later, they unsuccessfully requested this court to stay the instant appeal pending the district court's resolution of that motion.

## II. DISCUSSION

On appeal, the plaintiffs offer a potpourri of arguments. Their principal claims are that (i) the jury's special findings (i.e., its liability finding and its finding that the plaintiffs sustained no damages) are internally inconsistent and entitle the plaintiffs to a new trial on the issue of damages; (ii) the

-8-

district court improperly dismissed their due process counts; and (iii) the district court abused its discretion when it refused to admit the Morales Feliciano documents as full exhibits.[3] The first two claims of error were not adequately preserved. We dispose of them first and then proceed to examine the disputed evidentiary ruling.

## A.  The Waived Claims.

The "inconsistent verdict" claim is waived on at least two levels. First, that claim is presented as a supposed ground for a new trial. In a civil case, a motion for a new trial must be filed in the district court within ten days after the entry of judgment. See Fed. R. Civ. P. 59(b). That time period is mandatory. Feinstein v. Moses, 951 F.2d 16, 19 (1st Cir. 1991). The plaintiffs in this case did not file a new trial motion within that window of opportunity. That omission dooms their "inconsistent verdict" claim.

In an effort to snatch victory from the jaws of defeat, the plaintiffs assert that their notice of appeal was, in effect,

---

[3]The plaintiffs' other claims of error are unpreserved, insubstantial, or both. Accordingly, we reject them without discussion.

a motion for a new trial.[4]  That assertion elevates hope over reason.

The plaintiffs correctly observe that district courts are not bound by labels but have discretion to reclassify mistitled motions filed within the prescribed ten-day period as Rule 59 motions.  See, e.g., Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994) ("If circumstances warrant, the [district] court may disregard the movant's taxonomy and reclassify the motion as its substance suggests.").  The plaintiffs, however, did not file any motion within the prescribed ten-day period but, rather, filed a notice of appeal.  This is an important distinction.  Although filed in the district court, a notice of appeal is addressed to the court of appeals, not to the district court.  In addition, a notice of appeal serves an entirely different purpose than a post-judgment motion.  Thus, when a party files a notice of appeal, the district court is under no obligation to look at it or to consider its contents.  We conclude, therefore, that just as a post-judgment motion cannot serve as a proxy for a timely notice of appeal, see Elias v. Ford Motor Co., 734 F.2d 463, 467 (1st Cir. 1984), so too a notice of appeal cannot serve as a proxy for a timely Rule 59

_____

[4]We note that if the notice of appeal were construed as a timely Rule 59 motion, as the plaintiffs now suggest, this appeal would be a nullity.  See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 61 (1982) (explaining that appeals "self-destruct" and district courts regain jurisdiction in the face of a timely Rule 59 motion).

-10-

motion.  The bottom line is that the plaintiffs missed the Rule 59 deadline.[5]

The plaintiffs' so-called "amended" motion for a new trial, filed over seventeen months after judgment had entered, does not begin to fill this void.  As said, Rule 59 provides for filing a motion for a new trial within ten days of the entry of judgment — and the plaintiffs made no such submission.  It is so plain as not to warrant citation of authority that a party is not entitled, nunc pro tunc, to amend a non-existent motion.

It may be that a timely objection to verdict inconsistency can be preserved in "certain circumstances" without a subsequent motion for a new trial.  Here, however, the plaintiffs failed to object to the verdict after it was announced but before the court discharged the jury.  Silence at that juncture constitutes a waiver.  See Correia v. Fitzgerald, 354 F.3d 47, 57 (1st Cir. 2003) (holding that a failure to object to an alleged inconsistency while the jury is still in the box waives a party's objection); Wennik v. Polygram Group Distrib., Inc., 304 F.3d 123, 130 (1st Cir. 2002) (describing the rule that a party waives verdict inconsistency claims by failing to object before the jury

---

[5]The failure to file a timeous motion for a new trial not only undermines the plaintiffs' "inconsistent verdict" claim but also vitiates their poorly articulated claim that the take-nothing verdict was against the weight of the evidence.  See Muñiz v. Rovira, 373 F.3d 1, 5 (1st Cir. 2004); La Amiga del Pueblo, Inc. v. Robles, 937 F.2d 689, 691 (1st Cir. 1991).

-11-

is dismissed as "iron-clad"); <u>Skillin</u> v. <u>Kimball</u>, 643 F.2d 19, 19-20 (1st Cir. 1981) (explaining that the "only efficient time to cure . . . possible problems of [verdict] inconsistency would be after the jury announced the results of its deliberations and before it was excused").

The plaintiffs have waived their challenge to the district court's dismissal of their due process claims in a different, yet equally lethal, way. Their appellate brief thunders that this ruling should be reversed — but that remonstrance, twice repeated, is unaccompanied by any vestige of developed argumentation. Gauzy generalizations are manifestly insufficient to preserve an issue for appellate review. <u>See</u> <u>Ryan</u> v. <u>Royal Ins. Co.</u>, 916 F.2d 731, 734 (1st Cir. 1990) (holding that "issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned"); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

## B. <u>The Evidentiary Ruling</u>.

This brings us to the sole claim of error that the plaintiffs properly preserved: the challenged evidentiary ruling. We review a district court's decision to admit or exclude evidence for abuse of discretion. <u>Gomez</u> v. <u>Rivera Rodriquez</u>, 344 F.3d 103, 114 (1st Cir. 2003). Under this deferential standard, we cannot

-12-

substitute our judgment for that of the district court. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004). Instead, we may overturn a challenged evidentiary ruling only if it plainly appears that the court committed an error of law or a clear mistake of judgment. See Gomez, 344 F.3d at 114 (noting that the idiosyncratic nature of trial practice "counsels in favor of affording the presider some appreciable latitude in making evidentiary findings").

Here, the trial court expressly determined that the Morales Feliciano documents provided relevant background information for the political discrimination claims. Relevancy, however, is a condition precedent to admissibility, not an ironclad guarantee of admissibility. See Blake v. Pellegrino, 329 F.3d 43, 47 (1st Cir. 2003).

The Evidence Rules give trial courts explicit authority to exclude relevant evidence if its "probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury." Fed. R. Evid. 403. These were precisely the risks that the lower court sought to minimize when it chose to summarize the contents of the documents in lieu of allowing their introduction as full exhibits. This choice was well within the ambit of the court's discretion.

Viewed in isolation, the documents might well have created the false inference that, at the time Guzmán sent the non-

renewal letters, the plaintiffs had a protectible interest in continued employment. By the same token, the documents might have led the jury to infer — inaccurately — that Guzmán lacked the capacity to make contract renewal determinations. As a matter of law, the Morales Feliciano documents do not support either such inference — yet the plaintiffs' arguments for admitting the documents indicate that they wished to introduce them for precisely these (improper) purposes.

We add, moreover, that although there is some small degree of interrelatedness, the Morales Feliciano case dealt with different litigants and different issues than the case at hand. These differences, coupled with the plaintiffs' refusal to abide by the court's instructions, coalesced to create a legitimate risk that the jury might have been confused about the import of the proffered documents. District courts have the right — indeed, the obligation — to guard against juror confusion in such circumstances. See, e.g., Faigin v. Kelly, 184 F.3d 67, 80 (1st Cir. 1999). And the need for vigilance is increased where, as here, the trial court has had to contend with intransigence on the part of counsel.

The concerns that we have noted might have justified the district court in excluding the evidence entirely. Here, however, the court settled on a less drastic remedy and opted to summarize the pertinent portions of the documents for the jury so as to

provide useful background information.  The district court's summary of the documents was legally and factually correct, and, therefore, this compromise solution struck a fair balance between the policy favoring the admission of relevant evidence and the risk that the evidence might taint the proceedings.  When a district judge carefully reconciles conflicting considerations and reaches a sensible solution as to the handling of volatile evidence, an appellate court should hesitate to intervene.  See id. at 80-81. ("Rule 403 controversies by their very nature present competing considerations, and compromise is often the best solution for a particularly knotty Rule 403 problem.").

The plaintiffs make a related argument.  Citing the jury's request for the proffered documents, they decry the sufficiency of the trial court's summary.  The fact that a jury asks for specific evidence, however, does not strip a district judge of her discretion to withhold it based on appropriate concerns about potential prejudice, jury confusion, and the like. See United States v. George, 752 F.2d 749, 757 (1st Cir. 1985). Here, moreover, although the court denied the jury's specific request, it did reread its summary.  This accommodation adequately apprised the jurors of the background information relevant to a decision of the issues before them.

The sockdolager, of course, is that the evidence in question was only relevant to liability, not to damages.  Since the

-15-

jury ultimately found for the plaintiffs on the issue of liability, any error resulting from the court's refusal to admit the documents as full exhibits was obviously harmless. In other words, if an error occurred — and we discern none — it would not warrant overturning the verdict because it would have no effect on the plaintiffs' substantial rights. <u>See</u> Fed. R. Civ. P. 61; Fed. R. Evid. 103(a); <u>see</u> <u>also</u> <u>Macaulay</u> v. <u>Anas</u>, 321 F.3d 45, 54 (1st Cir. 2003).

## III. CONCLUSION

We need go no further. We uphold the district court's discretionary decision not to admit as full exhibits certain documents from the <u>Morales Feliciano</u> case. As that is the only issue properly before us, we have no basis for disturbing the judgment below.

**Affirmed**. **Costs shall be taxed in favor of the appellees**.