# United States Court of Appeals

## For the First Circuit

No. 05-2561

RENATO STRONI,

Petitioner,

v.

ALBERTO GONZALES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella and Lipez, <u>Circuit Judges</u>,

and Stafford,[*] <u>Senior District Judge</u>.

<u>Aleksander Milch</u>, with whom Christophe & Associates, P.C., was on brief, for Petitioner.
<u>Anh-Thu P. Mai</u>, with whom the Office of Immigration Litigation, U.S. Department of Justice, was on brief, for Respondent.

July 13, 2006

---

[*]Of the Northern District of Florida, sitting by designation.

**Stafford**, <u>District Judge</u>. Renato Stroni ("Stroni") seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's decision to deny Stroni's applications for asylum, withholding of removal, and protection under the Convention Against Torture. To the extent Stroni seeks review of the denial of his application for asylum, we dismiss his petition for lack of jurisdiction. We otherwise affirm the BIA's order and deny the petition for review.

I.

A.

Stroni is a native and citizen of Albania who claims that he entered the United States illegally on March 17, 2001. On March 12, 2002, almost one year after his purported entry date, Stroni filed an application for asylum with the Immigration and Naturalization Service ("INS").[1] In support of his request for asylum, Stroni described several incidents of past persecution by the Socialist government of Albania, incidents allegedly based on Stroni's political affiliation and opinion. Stroni also asserted that he feared he would be killed, tortured, or arrested if he returned to Albania.

The asylum officer who heard Stroni's case found Stroni's testimony to be vague, inconsistent, and lacking in detail.

---

[1] The functions of the INS have since been transferred to the Bureau of Immigration and Customs Enforcement, which is part of the Department of Homeland Security.

-2-

Although Stroni was given the opportunity to clarify all discrepancies in his testimony, he was unable to do so successfully. In particular, the asylum officer found that Stroni's testimony regarding the date, manner, and place of his entry into the United States was not credible. The asylum officer thus rejected Stroni's application for asylum, having concluded that Stroni failed to demonstrate by clear and convincing evidence that he filed his application for asylum within one year of his entry as required by law.

Upon referral from the asylum officer, the Immigration Court placed Stroni in removal proceedings by filing a Notice to Appear dated April 15, 2002. On June 28, 2002, at an initial hearing before an Immigration Judge ("IJ") in New York City, Stroni conceded removability as charged, renewed his application for asylum, and requested withholding of removal, protection under the Convention Against Torture ("CAT"), and, in the alternative, voluntary departure. The IJ adjourned the hearing after granting Stroni's request to transfer venue to Boston, Massachusetts.

Stroni ultimately presented documentary and testimonial evidence at two hearings before different IJs in Boston. At the first hearing, held on January 17, 2003, Stroni testified before IJ Thomas Ragno. IJ Ragno continued the hearing after Stroni's testimony was concluded to allow the INS to verify information provided by Stroni as to his entry date and use of passport

aliases. A second hearing was held on February 13, 2004, more than a year later, before IJ Kenneth Josephson. While acknowledging that IJ Ragno had taken testimony at the earlier hearing, IJ Josephson announced that he would hear the testimony again, explaining that he had not had an opportunity to listen to the tapes of the previous hearing. Before testimony was begun, IJ Josephson noted for the record that the computer printout from the "central indices" showed no supporting documentation for Stroni's claim regarding the date and place he entered the United States.

B.

Briefly, Stroni testified as follows:

Stroni was an activist on behalf of the Democratic Party ("DP") in Albania, an organization that opposed the communist regime that had controlled Albania for many years. Although Stroni himself was never a member of the DP, Stroni's father was a founding member and vice chairman of a local branch of the DP. The DP rose to power in 1992 but was defeated in 1997 by the Socialist Party, then dominated by a previous leader in the communist regime.

In October 1997, 19-year-old Stroni and his father were arrested at a DP rally where they were protesting the Socialist Party's practice of firing DP supporters. While they were being held at the police station, Stroni and his father were beaten and threatened with death if they continued to support the DP. Stroni was released after one night, his father after three nights.

-4-

In March 1999, a bomb was detonated outside Stroni's home, wounding Stroni's sister in the leg. Although the incident was reported to the police, the police failed to do anything about the bombing. Stroni believes that the family was targeted by "unknown people" for political reasons.

In or about November 1999, Stroni joined the Azem Hajdari, an anti-communist organization named after a DP activist who was assassinated on September 12, 1998. Stroni began paying dues to the Azem Hajdari in January 2000, and he thereafter attended meetings once or twice a month.

On August 28, 2000, Stroni and his father were once again arrested and taken to the police station. As before, they were beaten and threatened with death if they continued to support the democratic movement. They were released the next day.

On September 12, 2000, Stroni was arrested the morning after a DP demonstration commemorating the second anniversary of Azem Hajdari's death. Stroni was released that same evening, after he was punched, kicked, and warned that he could suffer the same fate as Azem Hajdari.

On December 1, 2000, Stroni was arrested for participating in protests in his hometown of Ballish. During his two-day detention, the police beat him, threatened him, and urinated on his face while holding his head.

After this latest arrest, Stroni left Ballish and went to live with his aunt in Tirana for several months. He lived there without incident, staying mostly inside. In January 2001, Stroni's father obtained an Albanian passport for Stroni from the very police department in Ballish where he and Stroni had been mistreated. Stroni claimed that he was too afraid to get the passport himself.

Stroni departed Albania on March 11, 2001, passing through Italy, Belgium, and Munich on his way to the United States. Stroni arrived in Chicago on March 17, 2001, using not his Albanian passport but a fake Italian passport issued in the name of "Carmello Pezzotta." Stroni disposed of his Italian passport the day after he arrived in the United States.

C.

By oral decision dated February 13, 2004, IJ Josephson ruled that Stroni was statutorily ineligible for asylum because he failed to satisfy his burden of establishing by clear and convincing evidence that he filed his asylum application within one year after his entry into the United States. Although Stroni testified that he entered the United States on March 17, 2001, the IJ specifically stated that he did not find Stroni to be credible. The IJ also noted that, in addition to Stroni's having failed to produce any documentary evidence to support his claimed entry date, the INS's "nonimmigrant information system inquiry" failed to

produce any supporting check for Stroni's claimed entry under the name of "Carmelo Pezzotta."

IJ Josephson also denied Stroni's applications for withholding of removal and protection under CAT, finding that Stroni had utterly failed to demonstrate that he would be persecuted, more likely than not, if he were to return to Albania. Among other things, the IJ cited the State Department's Profile Report, which described conditions in Albania as follows:

> The democratic party currently participates in most parliamentary activity.
>
> Despite opposition claims of massive voter disenfranchisement and other manipulations, nationwide local elections held in October of 2000 made clear and unmistakable progress towards meeting democratic standards. . . .
>
> All political parties have been active in most of the country without a pattern of mistreatment even during the dark days of 1997. There is no post communist tradition of retribution against political leaders and few instances thereof.

Albania: Profile of Asylum Claims and Country Conditions, May 2001. The IJ also noted that, as to his father and other family members who continued not only to live in Albania but also to openly support the Democratic Party, Stroni made no claim that they had suffered anything more than insults since Stroni's departure from Albania. Finally, describing some of the many inconsistencies in Stroni's testimony, the IJ simply concluded that Stroni's story about past and future persecution was not at all credible.

The BIA adopted and affirmed the decision of IJ Josephson, stating additionally that it agreed with the IJ's finding that (1) Stroni was statutorily ineligible for asylum because he both failed to meet his burden of demonstrating that he timely filed his asylum application and also failed to establish extraordinary circumstances for such delay; (2) Stroni failed to meet the heightened burden of proof to establish his eligibility for withholding removal; and (3) Stroni failed to establish his eligibility for protection under CAT because he failed to demonstrate both that he suffered torture in Albania in the past and also that he could not relocate to another area in Albania to avoid torture in the future.

## II.

This court normally reviews decisions of the BIA rather than those of an IJ. Where, as here, the BIA summarily adopts and affirms an IJ's decision, this court reviews the IJ's decision directly. Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005) (citing Njenga v. Ashcroft, 386 F.3d 335, 338 (1st Cir. 2004)). We review the BIA's additions to the IJ's decision directly.

We review the BIA's and/or IJ's findings of fact under the substantial evidence standard, reversing only if "the record evidence would compel a reasonable factfinder to make a contrary determination." Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004) (quoting Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003)). This

-8-

deferential standard applies not only to asylum claims but also to withholding and CAT claims. Settenda v. Ashcroft 377 F.3d 89, 93 (1st Cir. 2004). We review legal conclusions de novo*,* "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." Gailius v. INS, 147 F.3d 34, 43 (1st Cir. 1998).

When asked to review a credibility determination by the BIA and/or IJ, we look to see whether the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S. Ct. 812, 117 L. Ed. 2d 38 (1992)). This court will not reverse a determination that a witness was not credible unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Chen v. Gonzales, 418 F.3d 110, 113 (1st Cir. 2005).

III.

A.

An individual applying for asylum must "demonstrate[ ] by clear and convincing evidence that the application has been filed within 1 year after the date of the [individual's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). There is, however, an exception to the one-year filing requirement that applies if the applicant "demonstrates to the satisfaction of the Attorney General

either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). Significantly, no court shall have jurisdiction to review any determination of the Attorney General concerning whether an applicant for asylum filed an untimely application or qualifies for the exception to the filing requirement. 8 U.S.C. § 1158(a)(3); see also Mehilli v. Gonzales, 433 F.3d 86, 92 (1st Cir. 2005) (explaining that discretionary or factual determinations with regard to the timeliness of an asylum petition fall outside the jurisdiction of the court of appeals); Njenga, 386 F.3d at 339 (same).

Here, the IJ found that Stroni failed to demonstrate by clear and convincing evidence that his petition for asylum was timely filed. The BIA adopted and affirmed this finding of the IJ, finding, in addition, that Stroni had also failed to demonstrate that his delay in filing was excused by extraordinary circumstances. These findings were factual ones, based largely on Stroni's lack of credibility. Because these findings by the BIA/IJ are not subject to review by this court, we must dismiss Stroni's petition for review of the denial of his application for asylum for lack of jurisdiction.

B.

To establish eligibility for withholding of removal, an

-10-

individual has the burden of proving that, upon deportation, his "life or freedom would be threatened in that country because of the [individual's] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3); Salazar v. Ashcroft, 359 F.3d 45, 52 (1st Cir. 2004). An individual may satisfy this burden by demonstrating either that (1) he has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion (thus creating a rebuttable presumption that he will more likely than not suffer future persecution), or (2) it is more likely than not that he will be persecuted on account of a protected ground upon his return to his native land.  Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005) (citing 8 C.F.R. § 208.16(b)); see also Ang v. Gonzales, 430 F.3d 50, 54 (1st Cir. 2005) (explaining that an applicant for withholding of removal must show a "clear probability" of persecution upon removal from the United States).

If credible, the testimony of an applicant for withholding of removal may be sufficient by itself to sustain his or her burden of proof as to past or future persecution.  See 8 C.F.R. § 208.16(a) (2002) (providing that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration").  On the other hand, if an applicant's testimony is not credible, "it may be disregarded or

sharply discounted, depending on the circumstances." Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005). Importantly, minor or trivial inconsistencies in an applicant's testimony are insufficient to support an adverse credibility finding. See Secaida-Rosales v. INS, 331 F.3d 297, 308 (2d Cir. 2003) (stating that "[i]nconsistencies of less than substantial importance for which a plausible explanation is offered cannot form the sole basis for an adverse credibility finding . . . especially [ ] when the inconsistencies do not concern the basis for the claim of asylum or withholding, but rather matters collateral or ancillary to the claim" (internal citations and quotation marks omitted)). Instead, an adverse credibility finding must be based upon "discrepancies that involve[] the heart of the [withholding] claim." Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999).

Here, the IJ found that Stroni was not a credible witness and so denied Stroni's request for withholding of removal. The BIA summarily adopted and affirmed the IJ's decision, including the IJ's finding as to Stroni's lack of credibility. Like the asylum officer who first denied Stroni's application for asylum, the IJ based his credibility finding on the many inconsistencies in Stroni's testimony.

While some of the inconsistencies noted by the IJ are trivial, others go to the heart of Stroni's withholding claim. For example, the IJ noted that Stroni did not claim that he needed or

-12-

sought medical attention even though he claimed to have been "significantly physically mistreated." Without stating so explicitly, the IJ implied that Stroni's failure to seek medical attention cast doubt on his claim that he suffered significant past persecution. When the IJ asked Stroni about this apparent inconsistency, Stroni responded that the "communists were at all the hospitals." The IJ was unpersuaded by this "sweeping and unsupported" response. The IJ was also dubious of Stroni's claim that his family members had been told by authorities that Stroni would be killed if he returned to Albania. When the IJ asked Stroni why the authorities would want to kill him, given that his father--a founding member and an elected official of the DP-- had suffered nothing more than insults since Stroni left Albania, Stroni stated that the authorities were only concerned with young people and not with people over 50.[2] When reminded that neither he, in his asylum application, nor his father, in a declaration signed in July, 2002, had mentioned this death threat, Stroni explained that the threat was made a mere four days before the

---

[2] In Lumaj v. Gonzalez, 446 F.3d 194, 199 (1st Cir. 2006), the court upheld the IJ's lack-of-credibility finding in a case similar to this one. In Lumaj, the court stated:

> [The] petitioner's parents and sister remain in Albania, apparently without imminent risk of harm, despite the family's longstanding history of political persecution and his father's public status as an elected DP official. Although petitioner points to his parents' advanced age to explain their apparently peaceful existence, we have no basis for treating age as a relevant distinction.

February 2004 hearing.  Stroni then went on to explain that, although similar threats were made to his family in October of 1997 and September of 2003, he had no corroborating declarations about the earlier threats because "nobody asked me for it."

Our review of the record, which includes transcripts from the hearings before both IJs, does not compel us to reject IJ Josephson's lack-of-credibility determination.  As the IJ concluded, Stroni's testimony was rife with inconsistencies and implausibilities.  When asked why he would offer for the record his father's and uncle's declarations when those declarations contradicted certain details in his own testimony, Stroni claimed that he had not read the supporting declarations, adding that his father and uncle were simply confused.  Stroni had improbable memory lapses, changed his testimony when the IJ became incredulous, and blamed any discrepancies in his testimony on the mistakes of others.  When asked whether he had various specific documents to corroborate his testimony, Stroni explained that the documents had been thrown away or were otherwise unavailable.  See Dhima v. Gonzales, 416 F.3d 92, 95 (1st Cir. 2005) (explaining that, "if the applicant is found not to be credible, corroborating evidence may be used to bolster an applicant's credibility" (internal quotation marks and citation omitted)).  Quite simply, we are persuaded that the record adequately supports the IJ's lack-of-credibility finding and, in consequence, the IJ's finding that

-14-

Stroni failed to establish his past persecution.  Certainly, the record is not such that "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

We also agree with the BIA's finding that Stroni has not established that it is more likely than not that he will be persecuted upon his return to Albania.  Stroni acknowledged that his father and other family members have continued to live for several years in Albania without major incident despite their affiliation with the Democratic Party.  Stroni's father, a leading figure in the DP, was not so afraid of the police that he refrained from obtaining an Albanian passport for Stroni from the very police who participated in the alleged beatings.  Stroni admitted that he himself lived without incident for four months with his aunt in Tirana before he left the country.  The INS produced country reports revealing that, since 1997, all political parties had been active in most of the country without a pattern of mistreatment.  Given such record evidence, we cannot say that the BIA was compelled to find that Stroni demonstrated a clear probability that he would be subjected to persecution upon his return to Albania.

## C.

An individual seeking protection under CAT must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2); Saint Fort *v.* Ashcroft, 329 F.3d 191, 196 (1st Cir.

-15-

2003) (citing § 208.16(c)(2)).  "For an act to constitute torture it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004); see also 8 C.F.R. § 1208.18(a)(2) (providing that "torture" is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture").  Evidence relevant to the assessment of eligibility for CAT relief includes, but is not limited to: (1) evidence of past torture; (2) the viability of relocation as a means to avoid torture; (3) gross, flagrant or mass human rights violations in the country of removal; and (4) other relevant country conditions.  8 C.F.R. § 1208.16(c)(3).

          The IJ in this case rejected Stroni's CAT claim based on Stroni's lack of credibility.  The BIA affirmed, concluding that Stroni failed to establish that he suffered past torture in Albania.  The BIA also added that Stroni failed to show that he could not relocate to another area of Albania to avoid torture in the future.  As we have already explained, we find substantial record support for the IJ's lack-of-credibility finding and thus the BIA's finding that Stroni failed to demonstrate past torture.

-16-

Because these findings are enough to doom Stroni's request for protection under CAT, we do not reach the issue of whether Stroni failed to show that he could not relocate to another part of Albania to avoid future torture. Because we find that the record falls far short of compelling a conclusion contrary to that reached by the IJ and BIA, we affirm the decision as to Stroni's ineligibility for protection under CAT.[3]

IV.

Because we lack jurisdiction over Stroni's asylum claim, and because the record demonstrates that the findings of the IJ and BIA are amply "supported by reasonable, substantial, and probative evidence on the record considered as a whole," Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004), we DISMISS Stroni's petition to the extent he seeks review of his asylum claim, and we

---

[3] The INS maintains that Stroni has waived any challenge to the agency's denial of his CAT and withholding claims based on the perfunctory treatment of these claims in his appellate brief. To be sure, without citation to the record, Stroni does little more in his brief than assert in conclusory fashion that the BIA erred in finding him ineligible for withholding of removal and protection under CAT. While such perfunctory treatment is generally insufficient to preserve these issues on appeal, we nonetheless have considered and rejected Stroni's appeal of these issues on the merits. See Torres-Arroyo v. Rullan, 436 F.3d 1, 7(1st Cir. 2006) (noting that "[g]auzy generalizations are manifestly insufficient to preserve an issue for appellate review"); Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990)(holding that "issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned").

otherwise AFFIRM the BIA's order and DENY Stroni's petition for review.