**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 06-2347

LAHOUARI SAAD,

Petitioner,

v.

PETER D. KEISLER,[*]
ACTING ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Carlos E. Estrada, on brief for petitioner.
W. Manning Evans, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Mary Jane Candaux, Senior Litigation Counsel, on brief for respondent.

October 19, 2007

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzáles as respondent.

**TORRUELLA**, **Circuit Judge**.  On August 23, 2006, the Board of Immigration Appeals ("BIA") dismissed Petitioner Lahouari Saad's appeal of a decision by an Immigration Judge ("IJ") rejecting his claims of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Saad now petitions for review of the BIA's dismissal, arguing that (1) the absence of a formal denial of Saad's asylum application in the IJ's oral decision required the BIA to remand the case; (2) the IJ's failure to provide an explanation regarding Saad's ineligibility for an exception to the one-year deadline for asylum claims warrants remand; and (3) based on the evidence, the BIA erred in finding that Saad failed to establish an objectively reasonable fear of persecution.  After consideration of Saad's arguments, we note that we lack jurisdiction to review the finding that his asylum application was untimely, and on the remaining claims, we deny the petition for review.

## I. Background

Saad is a thirty-nine-year-old native and citizen of Algeria, who was admitted to the United States on July 13, 1997 on a six-month visitor's visa and remained beyond the authorized period.  His claims for asylum, withholding of removal, and CAT relief stem from repeated attempts by the Islamic Salvation Front ("FIS," for its French acronym), a radical Islamic group, to recruit Saad in his hometown of Oran in early 1997.  According to

Saad's testimony, he was initially approached by two FIS members when they asked him for a hotel recommendation while they stayed in Oran, visiting a sick friend in the hospital where Saad worked. Over the next few days, these men approached Saad three more times outside the hospital, each time "strongly" urging him to join FIS and help provide the group with medical supplies. When he declined during the second encounter, the men became "very rude" and told him they would give him some time to "think about it." During the final confrontation, one of the FIS members grabbed Saad by the throat and said, "Listen, we are not kidding here." After this last encounter, Saad never returned to work at the hospital because he was afraid for his life. He immediately applied for a visitor's visa to the United States and left Algeria six weeks later.

During the interim six weeks, Saad had no contact with the two FIS members. He does not know their names, and there is no evidence that they knew his. Saad also stated that, as far as he knew, the FIS members never looked for him at his house or approached any of his seven siblings or his parents, all of whom remained in Algeria.

In his testimony, Saad also related two other instances involving people he knew, which made him particularly fearful. In 1995, a friend of Saad's was killed by the Armed Islamic Group because he was cooperating with police in an investigation. Saad also knew another hospital worker who had cooperated with

terrorists and, as a result, had "disappeared" at the hands of the police. Saad did not testify that he had any personal connection to either incident.

Upon arriving in the United States in 1997, Saad did not immediately apply for asylum. In 2000 or 2001, he consulted an attorney when he purportedly won the diversity visa lottery, but did not take any action to legalize his immigration status at that time. On January 28, 2003, he reported for processing under the requirements of the National Security Entry Exit Registration System and was served with a Notice to Appear charging him with being removable.

Consequently, Saad filed claims for asylum, withholding of removal, and protection under the CAT. Because the asylum claim was filed beyond the one-year deadline, Saad also submitted written arguments and an affidavit alleging "changed or extraordinary circumstances" that would excuse his failure to timely file. Saad argued that his omission was a direct result of his lack of knowledge of the asylum laws in the United States. It is unclear from the record whether the IJ ever specifically denied the exception to the one-year deadline. However, when the IJ asked during the proceedings whether this was "a withholding only case," Saad's counsel responded, "Yes, Your Honor, that's correct. Because the application for asylum is years after the fact."

In an oral opinion, the IJ denied Saad's applications for withholding of removal and CAT protection, but granted him voluntary departure and issued an alternative order of removal to Algeria. Regarding Saad's original asylum claim, the IJ noted that it had been "time barred in that [Saad] failed to file within the one year limit and [Saad's] attorney concede[d] that [Saad's] request for relief is limited to withholding of removal." A formal order denying the asylum claim was not included in the oral decision but was included in the written decision.

In denying Saad's other claims, the IJ found that Saad was "generally credible," but also found that, even assuming the facts related by Saad were true, his past "encounters with the FIS in Algeria cannot be said to amount to persecution" because persecution "must amount to an experience that rises above mere unpleasantness, harassment, or even basic suffering." Further, the judge also found that Saad failed to show "a clear probability that he will be persecuted if he returns to Algeria." Finally, with respect to the CAT claim, the IJ concluded that Saad did not meet his burden of proof because "[t]here is no evidence of Government involvement in this case or any reference to torture."

The BIA dismissed Saad's appeal, rejecting his argument that a remand was necessary because the IJ did not formally deny the asylum application at the conclusion of his oral decision, concluding that "any omission . . . is harmless" and a remand would

be "administratively burdensome."  The BIA also concluded that Saad had failed to show changed or extraordinary circumstances necessary to excuse an untimely asylum application.  Finally, the BIA held that the IJ properly dismissed the withholding of removal and CAT claims because Saad had failed to establish past persecution or torture, or a likelihood of future persecution or torture.

## II. **Discussion**

On this petition for judicial review, Saad claims that (1) the absence of a formal denial of his asylum application in the IJ's oral decision was not, as the BIA found, a harmless error; (2) the IJ's failure to provide reasoning regarding Saad's ineligibility for an exception to the one-year deadline warranted remand; and (3) based on the evidence, the IJ and BIA erred in finding that Saad failed to carry his burden of establishing past persecution or a likelihood of future persecution.

We review the BIA's decision as the final agency order. Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004).  Whether or not an alien has met his burden is a determination that we review under the deferential "substantial evidence" standard.  See Estrada-Canales v. Gonzáles, 437 F.3d 208, 215 (1st Cir. 2006). Under this standard, the BIA's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).  We will thus uphold the BIA's decision if it is "supported by reasonable, substantial, and

probative evidence on the record considered as a whole." <u>Nikijuluw</u> v. <u>Gonzáles</u>, 427 F.3d 115, 120 (1st Cir. 2005) (quoting <u>INS</u> v. <u>Elías-Zacarías</u>, 502 U.S. 478, 481 (1992)).

To establish eligibility for asylum, an alien must show that he is a "refugee" within the meaning of the Immigration and Nationality Act. <u>See</u> 8 U.S.C. § 1158(b)(1)(A). The alien may meet his burden by establishing past persecution or a well-founded fear of future persecution on account of an enumerated ground. <u>See</u> <u>Toloza-Jiménez</u> v. <u>Gonzáles</u>, 457 F.3d 155, 161 (1st Cir. 2006). "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." <u>Nelson</u> v. <u>INS</u>, 232 F.3d 258, 263 (1st Cir. 2000).

An alien must seek asylum within one year of entering the United States, although the failure to file may be excused if the alien shows "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158 (a)(2)(D). However, "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]." Id. § 1158(a)(3); <u>see</u> <u>Pan</u> v. <u>Gonzáles</u>, 489 F.3d 80 84 (1st Cir. 2007). Therefore, this court lacks jurisdiction to review the BIA's finding that Saad's application was time-barred.

If the alien does not qualify for asylum because he fails to meet the one-year deadline, he may still qualify for withholding

-7-

of removal. The burden, however, is higher, in that the applicant must demonstrate that he is more likely than not to face persecution on account of a protected ground. Silva v. Gonzáles, 463 F.3d 68, 72 (1st Cir. 2006); see also Raza v. Gonzáles, 484 F.3d 125, 129 (1st Cir. 2007) ("A claim for withholding of removal carries with it a more stringent burden of proof than does a counterpart effort to obtain asylum." (internal quotation marks omitted)). Similarly, to qualify for protection under the CAT, the alien must establish that it is more likely than not that he would be tortured if he returned to his home country. Stroni v. Gonzáles, 454 F.3d 82, 89-90 (1st Cir. 2006) (quoting 8 C.F.R. § 208.16(c)(2)). Torture refers to "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), dealt at the hand of or with the acquiescence of the government. See Stroni, 454 F.3d at 90.

In this case, the BIA found that Saad had not established a likelihood of persecution or torture. We agree that there was substantial evidence to support this finding. The FIS's recruitment efforts were undoubtedly unpleasant, but they did not rise to the level of persecution or torture, see Nelson, 232 F.3d at 263-64, and there is no reason to suspect that the FIS will pursue Saad were he to return to Algeria. Consequently, Saad is not eligible for withholding of removal or CAT relief.

## III. <u>Conclusion</u>

For the foregoing reasons, we deny the petition for review.

**Denied**.