# United States Court of Appeals
## For the First Circuit

No. 04-2421

LI HUA ZHENG,

Petitioner,

v.

ALBERTO GONZALES,[*]
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,
Lynch and Howard, <u>Circuit Judges</u>.

<u>Henry Zhang</u> on brief for petitioner.
<u>Jennifer C. Boal</u>, Assistant United States Attorney, and
<u>Michael J. Sullivan</u>, United States Attorney, on brief for
respondent.

August 4, 2005

---

[*]  Alberto Gonzales was sworn in as Attorney General of the United
States on February 3, 2005.  We have substituted him for John
Ashcroft, previous holder of that office, as the respondent.  <u>See</u>
Fed. R. App. P. 43(c)(2).

**LYNCH**, <u>Circuit Judge</u>.  Li Hua Zheng, a Roman Catholic, asserts that she is a religious refugee from China.  An Immigration Judge (IJ) denied her claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  The Board of Immigration Appeals (BIA) affirmed, finding that even taking Zheng's testimony as true, she had demonstrated neither past persecution nor a well-founded fear of future persecution.  Zheng petitioned for review of the BIA's order; we deny the petition, holding that the BIA's findings are supported by substantial evidence.

## I.

Zheng was admitted to the United States in New York City on July 8, 2001, using a non-immigrant visa that authorized her to remain until October 7, 2001.[1]  Zheng did not leave by that date, but instead applied for asylum in March 2002, based on alleged persecution due to her religion.  On August 30, 2002, the INS sent Zheng a Notice to Appear, charging her with being removable based on overstaying her visa.  <u>See</u> 8 U.S.C. § 1227(a)(1)(B).  Zheng conceded removability but claimed, in accordance with her earlier

---

[1]  Zheng admitted at her hearing that this visa was fraudulent and was obtained for her by a smuggler.  Zheng was not charged with fraud in the notice to appear.  The IJ used the fraud as a factor in discretionarily denying Zheng voluntary departure, and the BIA affirmed this holding on other grounds.  Zheng has not raised voluntary departure in her petition to this court; any such claim has been waived.

application, that she was eligible for asylum, withholding of removal, and relief under the CAT.

A hearing on the merits of Zheng's claims was held before an IJ on June 3, 2003. The lone witness was Zheng herself. Zheng testified that she comes from a long-time Roman Catholic family, that she herself has been Roman Catholic since birth in 1967, and that she was baptized in 1980. She stated that her husband and child are also Catholic, and that she was a member and leader of the "Youth Catholic Class."

According to the U.S. Department of State International Religious Freedom Report for 2002, while many Chinese Catholics belong to the "registered" Church, which is officially recognized by the Chinese government and which refuses to acknowledge the Vatican's supremacy in areas where the Vatican's teachings conflict with Chinese government policy, others belong to an "unregistered" Church which is not recognized by the Chinese government.[2] Zheng testified that she was a member of the unregistered Church; she indicated that the registered Church is too subject to government control for her liking.

---

[2] The Report states that there have been some instances of government officials -- particularly local officials -- harassing, intimidating, or imprisoning unregistered Christian leaders, and there have been a few instances in which unregistered houses of worship have been destroyed. However, the Report also stressed that there is no widespread policy along these lines: unregistered Catholic churches are often and in many places tolerated by officials.

-3-

Zheng's claim of persecution, according both to her testimony and to an affidavit that she filed along with her asylum application, is based on a single incident that she claims occurred on August 15, 2000. According to her testimony, that evening, a congregation of 300 gathered at her village church for mass. During the ceremony, approximately ten government officials or police officers broke into the church and attempted to arrest the priest, a distant relative of hers, who was leading the mass. Zheng did not see the officials carrying guns or other weapons, and she did not state that the officials were attempting to arrest her. Zheng testified that she led the priest out of the church through a passageway in the basement, and thus the priest was able to elude the officials.

Zheng initially took the priest to her grandmother's house in a nearby village, where they stayed for two days, but Zheng was concerned that she might cause trouble for her grandmother if they remained at her house, so Zheng and the priest quickly moved on to another province, Guandong, where Zheng had a cousin. Once there, the priest left on the second morning because "he had his job to do," but Zheng remained. According to Zheng's affidavit (although this was not in her oral testimony), her Guandong cousin called her village, and Zheng's mother-in-law allegedly told him that "police and village cadres [had been] to [her] house several times, looking for [her]." She became "very

-4-

scared" and did not return from Guandong to her home village before leaving for the United States. She stated that if she returns to China now, she believes the Chinese government will arrest her for protecting the priest.

Zheng testified that her husband and son remain in China. Her son, who transferred to a different government school when she left, continues to live in the same province. Her husband moved to a different province because the "Chinese government harassed him"; "[h]e couldn't live in his hometown and he had to leave to find a job." Zheng also testified that her village church, which was built in 1999 with money donated from parishioners (including herself and her husband) was torn down about two months after the August 15, 2000 incident.

The IJ found Zheng's testimony to be "unconvincing and unpersuasive" because the story about the escape from the village church seemed unlikely and because Zheng had lived most of her life as a practicing unregistered Christian without incident. However, the IJ refused to make an adverse credibility finding because such a finding perhaps required "more specifics than I have been able to offer." The IJ found that "the reason for my not buying into the respondent's story is not because I am declaring her to be a non-credible witness but rather because I find her testimony to be unconvincing and non-persuasive because it is not logical or plausible that such an event would have occurred." Based on the

unpersuasiveness of Zheng's story, the IJ held that Zheng had shown neither past persecution nor a well-founded fear of future persecution. The IJ denied Zheng's claims for asylum, withholding of removal, and relief under the CAT.

Zheng appealed to the BIA, which affirmed on different grounds on September 28, 2004. The BIA wisely shied away from the IJ's credibility finding, which it labeled "murky." Instead, the BIA held that even assuming Zheng's testimony were true, she had demonstrated neither past persecution nor a well-founded fear of future persecution. On past persecution, the BIA stated that the "single event forming the basis of [Zheng's] claim; namely being sought by authorities for helping the priest escape a raid on their Catholic church, simply does not rise to the level of persecution." The BIA noted that Zheng was never "detained or explicitly threatened." As for a well-founded fear of future persecution, the BIA acknowledged some evidence -- from the U.S. Department of State reports -- that the Chinese government has "placed some restrictions on religious activity and has cracked down on unregistered religious groups," but stressed that, according to these reports, "religious adherents in China are generally able to practice their faith." The BIA also emphasized that Zheng's husband and son, who are Catholic, are still able to live, work, and attend school in China, and noted that no warrant had been issued for Zheng's arrest.

Zheng filed a timely petition with this court, appealing the BIA's denials of her asylum, withholding of removal, and CAT claims. Her sole argument on appeal is that the BIA's findings with respect to past and future persecution are not supported by substantial evidence.

Zheng has the burden of establishing eligibility for asylum. Diab v. Ashcroft, 397 F.3d 35, 39 (1st Cir. 2005); 8 C.F.R. § 1208.13(a). Applicants can meet this burden by proving either (1) a well-founded fear of future persecution or (2) past persecution (which entitles the applicant to a rebuttable presumption of a well-founded fear of future persecution) on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.13(b). The BIA's findings are reviewed under the deferential substantial evidence standard, INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Bocova v. Gonzales, 412 F.3d 257, 2005 WL 1491490, at *2, *5 (1st Cir. 2005); Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005), and must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Throughout our discussion, we will utilize the BIA's assumption that Zheng's testimony is true.

As to past persecution, the BIA cited our decision in Nelson v. INS, 232 F.3d 258 (1st Cir. 2000), where we noted that

"[t]o qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Id. at 263; see also Bocova, 2005 WL 1491490, at *4 ("[M]istreatment ordinarily must entail more than sporadic abuse in order to constitute persecution."). Here, the BIA's conclusion is amply supported; indeed, there is no real evidence that Zheng suffered any mistreatment at all. The primary incident that Zheng relies upon, the storming of the village church by unarmed officials, was apparently targeted at the priest and seemed to have had nothing to do with Zheng. The fact that Zheng fled after that incident does not indicate persecution -- there is no evidence that her flight was spurred by government action. Nor, without more, does the fact that her village church was torn down. And the BIA reasonably explained that the fact that village officials or police came to Zheng's house to look for her, without any evidence of threats of harm or arrest, did not amount to persecution. Given that Zheng was never detained or harmed, nor even ever threatened with detainment or harm, we are hardly compelled to find, contrary to the BIA, that she was subject to past persecution.

As to a well-founded fear of future persecution, the standard is whether Zheng can show a fear which is both "genuine and objectively reasonable." Aquilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999). The BIA seemed to assume that the subjective prong was met, but held that the objective prong was not. Zheng

-8-

argues that the BIA did not consider the State Department reports that Zheng presented, but it is clear that the BIA did address this material. The BIA's interpretation of these reports -- that while some localized restrictions and crackdowns on unregistered Catholics had occurred, the climate was generally not particularly oppressive -- is well supported. And as the BIA stressed, Zheng's husband and son, who are both unregistered Catholics, still live and work in China. Although Zheng testified that her husband had to move because of "harassment," she does not explain what this entailed. There is no evidence that anyone would seek to arrest or harm Zheng should she return to China. As such, we are not compelled to find, contrary to the BIA, that Zheng has a well-founded fear of future persecution.

Zheng's asylum claim therefore fails; her withholding of removal and CAT claims also fail.[3]

**III.**

The BIA is affirmed; the petition for review is **denied.**

---

[3] On the CAT and withholding of removal claims, our review is again only for substantial evidence. See, e.g., Sharari, 407 F.3d at 473-75. To show entitlement to withholding of removal, Zheng must show that she is "more likely than not to face persecution" on account of one of the protected grounds if she is returned to China. See id. at 474. Since this is a higher standard than asylum, the BIA supportably determined that Zheng has not met it. To show entitlement to protection under the CAT, Zheng must show that it is "more likely than not that [she] would be tortured if removed." See id. (quoting 8 C.F.R. § 208.16(c)(2)). The BIA supportably found, based on the evidence already discussed, that Zheng has not met this standard.