# United States Court of Appeals

## For the First Circuit

No. 05-1452

EDWARD DIRK NIKIJULUW,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, <u>Circuit Judge</u>,

Coffin, <u>Senior Circuit Judge</u>,

and Howard, <u>Circuit Judge</u>.

<u>Haian Lin</u> on brief for petitioner.
<u>Peter Keisler</u>, Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, and <u>Robbin K. Blaya</u>, Attorney, United States Department of Justice, on brief for respondent.

October 26, 2005

**SELYA**, **Circuit Judge**.  In this immigration case, the petitioner, Edward Dirk Nikijuluw, asserts that he is a religious refugee from his native Indonesia.  An Immigration Judge (IJ) found that the petitioner's claim of religious persecution lacked substance and ordered him removed.  The Board of Immigration Appeals (BIA) upheld the IJ's order.  The petitioner now seeks judicial review.  After careful consideration, we deny the petition for review.

## I.

### Background

The petitioner is a fifty-two year old citizen of Indonesia who lawfully entered the United States on September 8, 2001 as a non-immigrant visitor for business purposes.  By its terms, his B-1 visa permitted him to remain in the United States until October 7, 2001.  See generally 22 C.F.R. § 41.31(a) (1998). The petitioner overstayed his visa without securing the appropriate authorization from the Immigration and Naturalization Service (INS).[1]  Consequently, the INS charged him with remaining longer than permitted, see 8 U.S.C. § 237(a)(1)(B), and instituted removal proceedings.  The petitioner conceded removability but cross-filed for asylum, withholding of removal, and protection under the

---

[1]The Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security.  See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).  For simplicity's sake, we refer throughout to the INS.

Convention Against Torture (CAT). He claimed in substance that, while in Indonesia, radical Muslims had persecuted him and his family (at a bare minimum, the petitioner and his parents, wife, and children subscribe to the Christian Protestant faith).[2]

The petitioner pointed to three specific incidents which, in his view, established his claim of religious persecution. First, he expressed his belief that Muslims were behind the disappearance of his eldest daughter, whose whereabouts have been unknown since 2001. Second, he alleged that Muslims set fire to the church to which he belonged in November of 1999. Third, he averred that because he sometimes held religious services in his home, he received at least three anonymous threats and unknown persons stoned the house.

An INS asylum officer interviewed the petitioner as part of an investigation into his application and, finding that his account of what had transpired in Indonesia lacked veracity, referred his case to the immigration court. After an evidentiary hearing, the IJ concluded that the petitioner had failed to carry the burden of proof on any of his asserted claims, in part because the petitioner's testimony regarding past incidents of alleged persecution was not credible. The IJ provided specific and cogent reasons to support this conclusion.

---

[2]The petitioner also implied in his testimony (although the record does not explicitly so state) that his siblings are Christian Protestants.

To begin, the IJ found no evidence that the disappearance of the petitioner's daughter had anything whatever to do with her religious affiliation. In fact, the credible evidence indicated that the daughter had become a Muslim and had attempted to persuade her family to accept that religion.

In all events, the petitioner's testimony about this incident was wildly inconsistent. For example, on his asylum application he wrote that his daughter had been seduced by a fanatic Muslim, but during his interview he claimed that she had vanished during a series of riots that included attacks on his church. Later still, he stated that he did not know why or how his daughter had disappeared. There was also an intimation in the record that the petitioner's daughter may simply have run away with her boyfriend after she had begun performing as a night club singer.

As to the second incident, it was clear that fire had consumed the petitioner's church in November of 1999. The IJ noted, however, that the church was in the process of being rebuilt and that the church community continued openly to hold regular worship services.

In the same vein, the IJ cited the Department of State Country Report on Human Rights Practices for 2002 (the Country Conditions Report) as evidence that the petitioner's claims of religious persecution were overblown. The Country Conditions

-4-

Report explained that the Indonesian constitution "provides for every resident to adhere to their respective religion and to perform their religious duties in accordance with their religion and faith." It also vouchsafed that the Indonesian government generally respected this constitutional provision and officially acknowledged Protestantism as one of several recognized religions. Finally, the Country Conditions Report indicated that, by 2002, incidents targeting churches were "much less frequent than in previous years."

The IJ also considered, and rejected, the petitioner's testimony regarding the anonymous threats and the stoning of his home. He observed that the petitioner had failed to mention these incidents to the asylum officer. While the statement attached to his asylum application recounted threats of stone-throwing, it did not mention that such an event had actually occurred. On the basis of these omissions, the IJ found that the petitioner had failed to establish by credible testimony that the stone-throwing incident had taken place.

Overall, the IJ evaluated the petitioner's assertions as "general, meager and weak" and concluded that the petitioner had not carried his burden of establishing religious persecution. To buttress this conclusion, the IJ noted that the petitioner had lived, worked, and raised a family in Indonesia, for the most part without incurring any religious hostility. The IJ further noted

that the petitioner's family, including his wife, children, parents, and siblings, remained in Indonesia and that there was no evidence that any family member had been a victim of religious persecution at any time after the petitioner's entry into the United States. Finally, the IJ noted that the petitioner had never been arrested, detained, threatened, or put in harm's way by the Indonesian government or any of its agents on account of his religious beliefs.

Consistent with these findings, the IJ denied the cross-application for asylum, withholding of removal, and protection under CAT; ordered the petitioner removed; and designated Indonesia as the country of removal. The BIA upheld the IJ's decision, concluding that the petitioner had failed to establish past persecution, a well-founded fear of future persecution, or a sufficient likelihood that he would be subjected to torture upon his return to Indonesia. This timely petition for judicial review followed.

## **II**.

### **Discussion**

We start — and end — with the denial of the petitioner's application for asylum.[3] In reviewing the BIA's denial of an

---

[3]It is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); accord Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004) (enunciating the same principle in the

asylum application, we examine its findings of fact, including its credibility determinations, to ascertain whether those findings are supported by substantial evidence in the record. See Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005); Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). Under this highly deferential standard, we must accept the BIA's findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Absent an error of law, we can overrule the BIA's ensuing decision only if the evidence "points unerringly in the opposite direction." Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).

The petitioner bears the burden of establishing that he qualifies for asylum. See 8 U.S.C. § 1158(b)(1)(B)(i); see also Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). To qualify as a refugee within the meaning of the Immigration and Nationality Act, an asylum seeker must show that he cannot return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Upon a satisfactory showing of past persecution,

---

immigration context). Here, the petitioner has devoted his appellate brief exclusively to his asylum claim and has failed to develop any argument supporting either his claim for withholding of removal or his claim for protection under CAT. Consequently, we deem those claims abandoned.

a rebuttable presumption arises that a petitioner's fear of future persecution is well-founded. Makhoul, 387 F.3d at 79.

The Immigration and Nationality Act provides no precise definition of "persecution." The case law, however, is more informative. We have held that past persecution requires that the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment. See, e.g., Bocova, 412 F.3d at 263; Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Moreover, persecution "always implies some connection to government action or inaction." Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005). Thus, an applicant qualifies for asylum only when he suffers persecution that is the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct. Id.

It is transparently clear that in order to establish refugee status, an alien must support his claim of persecution through credible testimony. Credible testimony, standing alone, may be adequate to sustain the alien's burden of proof. See Settenda v. Ashcroft, 377 F.3d 89, 92 (1st Cir. 2004). But if the proffered testimony is not credible, it may be either disregarded or sharply discounted, depending on the circumstances. See, e.g., Laurent, 359 F.3d at 64; see also Aguilar-Solis v. INS, 168 F.3d 565, 570-71 (1st Cir. 1999).

Commensurate with the importance of credibility determinations in immigration cases, an IJ must offer a specific and cogent rationale for disbelieving the alien. El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003); Gailius v. INS, 147 F.3d 34, 47 (1st Cir. 1998). In this instance, the IJ's findings easily pass through that screen. Since the adverse credibility determination is supported by substantial evidence, the petitioner's testimony cannot carry the day — and the record contains little of substance, apart from the petitioner's testimony, that might serve to corroborate his story or otherwise to shore up his asylum application.

Even if we were to leave to one side the IJ's determination that the petitioner's tales were not worthy of credence and accept the petitioner's testimony as true, he still would not have offered sufficient evidence to establish persecution within the meaning of our precedents. At most, the petitioner has suffered sporadic private discrimination — and there is no evidence that such discrimination (if, indeed, it occurred) was sponsored, supported, or condoned by the government. We explain briefly.

The evidence related to the disappearance of the petitioner's daughter was extremely sketchy. There is nothing in the record — other than the petitioner's unfounded suspicions — to suggest that the daughter's disappearance stemmed from some sort of religious jihad, much less that the Indonesian government conspired

in, or condoned her disappearance. The other evidence is no more compelling; even assuming that radical Muslims burned down the church and stoned the petitioner's house in retaliation for the holding of weekday worship services, there is no proof connecting these isolated acts of private discrimination with the Indonesian authorities. Moreover, the other undisputed facts — e.g., that the church is being rebuilt, that the congregation continues to function openly, and that the petitioner's Christian relatives have been able to live tranquilly in Indonesia — comprise strong evidence that the government was not involved in whatever discrimination the petitioner may have experienced. Consequently, we find no basis for disturbing the BIA's conclusion that the petitioner failed to show past persecution.

The only remaining issue is whether, independent of any presumption arising out of past persecution, the petitioner has shown a well-founded fear of future persecution. The IJ and the BIA answered this question in the negative. The record does not allow us to quarrel with that answer.

In order to show a well-founded fear of future persecution, a petitioner must satisfy both subjective and objective components. He must "not only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." Laurent, 359 F.3d at 65. Credibility aside, the petitioner's testimony that he fears harm

should he return to Indonesia arguably satisfies the subjective component. Thus, we focus the lens of our inquiry on the objective component.

An objectively reasonable fear of future persecution exists if a reasonable person in the petitioner's circumstances would fear persecution based on a statutorily protected ground. Aguilar-Solis, 168 F.3d at 572. In a highly analogous case, this court determined that a petitioner could not establish a well-founded fear of future persecution when her family lived safely in the country of deportation and there was neither record evidence nor significant support in State Department reports for the petitioner's claim of likely future persecution. Zheng v. Gonzales, 416 F.3d 97, 101 (1st Cir. 2005). Here, as in Zheng, the petitioner's family members (most of whom share his religious affiliation) continue to live peaceably in his native land and there is no probative evidence that the petitioner will be harmed should he return. The Country Conditions Report states that incidents of violence against Christians in Indonesia are in significant decline. To cinch matters, the petitioner's Indonesian church community is rebuilding the destroyed house of worship and continues to hold regular services. While a reasonable person in the petitioner's position might fear encountering some private hostility in a majority Muslim country on account of his Christian

Protestant beliefs, the record does not make manifest any objective basis for a fear of future persecution.

## **III**.

## Conclusion

We need go no further. Because the petitioner failed to adduce credible and probative evidence showing either past persecution or a well-founded fear of future persecution, the BIA's rejection of his application for relief stands on solid ground. Accordingly, the petition for judicial review is denied.

**So Ordered**.