**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 06-1345

JIMMY TEJA,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Randall A. Drew and Law Offices of Mona T. Movafaghi, PC on brief for petitioner.
Peter Keisler, Assistant Attorney General, Civil Division, U.S. Department of Justice, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Rebecca A. Perlmutter, Attorney, U.S. Department of Justice, on brief for respondent.

September 15, 2006

**Per Curiam**. Petitioner Jimmy Teja seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA). Teja's sole appeal is from the BIA's denial of political asylum. He has not argued error in the Board's affirmation of the Immigration Judge's (IJ) denial of withholding of removal and relief under the Convention Against Torture, and thus has waived those issues. The BIA affirmed the IJ's conclusion that, although the petitioner was credible, he had failed to establish an asylum claim based on past persecution or a well-founded fear of future persecution. We now affirm the BIA's decision.

Teja, a native and citizen of Indonesia, is ethnic Chinese and a practicing Christian. He entered the United States with a valid tourist visa on May 28, 2001, and applied for political asylum on May 30, 2002.[1] In this petition for review, Teja argues that he qualifies for asylum because he has suffered past persecution and has a well-founded fear of future persecution on account of his religious affiliation and his status as an ethnic Chinese minority.

The IJ found Teja credible. We relate the facts as he testified to them. Teja stated that he suffered discrimination and harassment from a young age because he is ethnic Chinese and Christian. In high school, a classmate demanded money from him,

---

[1] The IJ deemed the application timely because the government, at trial, waived any objection to the applicant's failure to file for asylum within one year of entry.

-2-

assuming that as an ethnic Chinese he was wealthy. When Teja did not respond favorably to the demand, the classmate beat him and threatened to kill him if he reported it. Before Teja commenced his university studies, he changed his name from Kok Liang The, his given Chinese name, in order to avoid future problems.

On May 14, 1998, Teja's uncle, a bill collector, was attacked by a mob, apparently because they thought he was ethnic Chinese. He was beaten severely and then set on fire, using gasoline from his motorcycle. As a result of this incident, Teja's uncle was permanently disabled. The incident took place during widespread mob violence against ethnic Chinese in Indonesia in 1998. In his testimony, Teja acknowledged that he was not present during the attack and at that time lived about 25 kilometers away from his uncle.

On February 10, 2001, four days after Teja held a Bible study session at his home, a group of Muslim neighbors attacked the house. They threw stones at the building and were armed with sharp knives. Teja's wife was at home alone at the time and called Teja at work and also summoned the authorities, who protected the house from the mob. Teja's neighbors later told him that they attacked the house because they did not like that he held Bible study there. He testified that neighbors continued to watch the house and as a result, he stopped holding Bible study at his home. Teja left Indonesia for the United States four months after this attack.

Teja's wife and two children continue to live in the same home in Indonesia and attend church weekly, apparently without incident. Teja's testimony was unclear as to whether his family's house has been attacked since he left Indonesia.[2] Teja also testified that his eight-year-old daughter was threatened by a passerby, who told her "hey your [sic] Chinese, tell your father you'll be killed."

In addition to Teja's testimony, the administrative record provides significant evidence of the 1998 violence against ethnic Chinese. However, the record also shows that a similar flare-up has not occurred since then. Indeed, the 2004 State Department Country Report on Indonesia notes a decline in instances of discrimination and harassment of ethnic Chinese over the previous year. The 2003 Country Report notes a sharp drop in violence

---

[2] Teja initially testified that his family's home had come under frequent attack since the initial incident:

Q: After February 10th, 2001 did that type of things [sic] (indiscernible) stoning at your house ever happen again?
A: Yes.
Q: How many more times did that happen again?
A: Often and the last one my wife told me that they also threw feces at my house.

However, later in his testimony, Teja gave a different response:

Q: Did they have any problems after you left for America?
A: They've never had any problems but my wife is always scared and their [sic] always scared until now.
Q: What are they scared of?
A: That the vandalism of my house happens again.

The immigration judge, in her findings of fact, did not mention Teja's statements about subsequent attacks or the feces allegation, concluding instead that "Apart from [the passer-by's statement to his daughter], they do not appear to have had any difficulty [since the 2001 incident]."

between Christians and Muslims. The 2004 Country Report does note continuing violence between Christians and Muslims in the eastern provinces of Central Sulawesi, Maluku, and North Maluku, areas where Teja does not live.

The IJ found Teja credible but ruled that he did not qualify for asylum based on past persecution or a reasonable fear of future persecution. The BIA affirmed, finding insufficient evidence of past persecution, and a lack of a reasonable fear of future persecution, or a pattern or practice of persecution against Christians and/or ethnic Chinese.

This court reviews BIA decisions regarding asylum eligibility for substantial evidence; we must accept the BIA's findings of fact if they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). We will reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). A petitioner bears the burden of establishing eligibility for asylum "by proving either past persecution or a well-founded fear of persecution," on account of his race, religion, nationality, membership in a particular social group, or political opinion. Velasquez v. Ashcroft, 342 F.3d 55, 58 (1st Cir. 2003). A well-founded fear of future persecution can be shown in either of two ways. First, the petitioner may show a

-5-

genuine subjective fear of persecution, along with "credible, direct, and specific evidence" that would objectively support a reasonable fear of future individualized persecution. Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003) (quoting Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992)). Second, a petitioner need not provide evidence that he would be singled out for persecution if he establishes that there is "a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii)(A).

In contesting the BIA's determination, Teja asserts that he has suffered past persecution and has a well-founded fear of persecution; he puts particular emphasis on his claim of a pattern or practice of persecution. We do not find these arguments persuasive. First, the evidence does not compel a reasonable fact-finder to conclude that Teja suffered past persecution. Past persecution is more than "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000); see also Susanto v. Gonzales, 439 F.3d 57 (1st Cir. 2006) (past persecution not shown where home of ethnic Chinese Indonesian was vandalized and Muslims threw stones at petitioner and fellow Christian worshipers). Here, the harms experienced by Teja are

insufficiently severe to compel the conclusion that he has suffered past persecution.

Second, a reasonable fact-finder would not be compelled to conclude that Teja has an objectively reasonable fear of future persecution. Such a fear is shown where "a reasonable person in the petitioner's circumstances would fear persecution based on a statutorily protected ground." Nikijuluw v. Gonzales, 427 F.3d 115, 122 (1st Cir. 2005). In similar asylum claims brought by ethnic Chinese Christians, this court has held that where the applicant's family members continue to reside in Indonesia without suffering persecution and where Country Reports indicate a significant decline in violence against ethnic Chinese and Christians, the applicant has not shown an objective fear of future persecution. Id. at 122; Zheng v. Gonzales, 416 F.3d 97, 101 (1st Cir. 2005). Here, Teja testified that his family continues to attend church without problems and has, at most, suffered from private hostility and prejudice based on religion and/or ethnicity. Therefore, he has not shown an objectively reasonable fear of future persecution.

Third, we do not believe that, on this administrative record, a reasonable fact-finder would be compelled to conclude that ethnic Chinese and/or Christians in Indonesia are subject to a pattern or practice of persecution. This court has held that a pattern or practice claim requires a showing of systematic persecution

targeting a group on account of one of the five protected categories. <u>Mequenine</u> v. <u>INS</u>, 139 F.3d 25, 28 (1st Cir. 1998). While the record in this case shows that ethnic Chinese and Christians in Indonesia did suffer harm in 1998 and have continued to experience sporadic violence and discrimination in certain areas of the country, the record is not sufficient to compel the conclusion that these groups suffer from systematic persecution. This is particularly true where the 2004 Country Report notes a decline in incidents of discrimination and harassment against ethnic Chinese, and the 2003 Country Report notes a sharp drop in violence between Christians and Muslims.

For the foregoing reasons, the petition for review is **denied.** The decision of the BIA is **affirmed.**

_____