**Not For Publication in West's Federal Reporter**

# United States Court of Appeals

## For the <u>First Circuit</u>

No. 06-2314

FRIEDA EVELYNE,

Petitioner,

v.

PETER D. KEISLER,[*]
ACTING ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, <u>Chief Judge</u>,
Torruella, <u>Circuit Judge</u>,
and Schwarzer,[**] <u>Senior District Judge</u>.

---

<u>William A. Hahn</u> and <u>Hahn & Matkov</u>, on brief for petitioner.
<u>Greg D. Mack</u>, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Terri J. Scadron</u>, Assistant Director, on brief for respondent.

---

October 5, 2007

---

[*]  Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzáles as respondent.

[**]  Of the Northern District of California, sitting by designation.

**Per Curiam**.    Frieda Evelyne applied for asylum, withholding of removal, and relief under the federal regulations implementing the Convention Against Torture ("CAT").    An immigration judge ("IJ") denied all of Evelyne's claims and ordered her removed.    She appealed to the Board of Immigration Appeals ("BIA"), which affirmed.    Evelyne now petitions for review of the BIA's denial of her appeal.    After careful consideration, we deny the petition.

## I.    FACTUAL BACKGROUND

Evelyne, a Christian Protestant from Indonesia, entered the United States on June 15, 2001 on a nonimmigrant visa and remained past the authorized date.    On November 2, 2001, she filed an application to extend or change her nonimmigrant status, which is apparently still pending.    Subsequently, the Immigration and Naturalization Service ("INS") commenced removal proceedings against her.    In response to the INS notice to appear, Evelyne admitted that she had remained in the United States beyond the time allowed by her visa in violation of 8 U.S.C. § 1227(a)(1)(B). A.R. 654-55.    She petitioned the IJ for asylum, withholding of removal, and CAT relief.

A hearing was held before the IJ at which Evelyne testified that she had suffered mistreatment in Indonesia on account of her Christian faith.    She described an incident in 1998 in which purported Muslim radicals had punched her in the chest.

In 1999, Muslims from a nearby mosque threw rocks at her house and told her that the Christian prayer services she was holding were disturbing them in the mosque; this and a later similar incident prompted her to discontinue such services. Evelyne also described a 2001 incident in which her house was ransacked, items were stolen, and anti-Christian graffiti was painted on the walls while she was away. She testified that her children continued to live in Indonesia after she came to the United States. At a certain point in the hearing the IJ took over the questioning of Evelyne, and much of her testimony was given in response to the IJ's questions.

The IJ found that the Government had satisfied its burden of proving by clear and convincing evidence that Evelyne was removable: she had conceded removability, and the mere fact that her visa extension application was still pending did not amount to an automatic extension. The IJ found further that Evelyne did not qualify for asylum, withholding of removal, or CAT relief: while she had been a victim of religious discrimination, she had not shown that she had suffered past persecution, or that she had an objectively reasonable basis for her fear of future persecution. The BIA affirmed, and held additionally that the IJ had not deprived Evelyne of a full and fair opportunity to present her case by conducting much of the examination himself.

Evelyne appeals the BIA's findings that she was removable, that she was not eligible for asylum,[1] and that the IJ did not deprive her of a full and fair opportunity to present her case.  We address these items in turn.

## II.  DISCUSSION

### A.  Standard of Review

We normally review decisions of the BIA and not those of immigration judges; however, where, as here, the BIA has adopted and affirmed findings of the IJ, we also review the adopted portion of the IJ's decision.  Simo v. Gonzáles, 445 F.3d 7, 11 (1st Cir. 2006); Vásquez v. INS, 177 F.3d 62, 64 (1st Cir. 1999).  We review the BIA's legal conclusions de novo, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles.  Molina De Massenet v. Gonzáles, 485 F.3d 661, 663 (1st Cir. 2007).  In asylum claims, the Court reviews the factual findings of the BIA and the IJ under the "substantial evidence" standard, reversing only if the evidence of record would compel a reasonable factfinder to make a contrary

---

[1]  Evelyne asks us to review her asylum claim, but apparently does not contest the denial of her claims for withholding of removal and CAT relief. In any event, she clearly failed to raise these two claims in her brief before the BIA, and thereby waived her right to have this court consider them. Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) ("[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order.").

determination.  Stroni v. Gonzáles, 454 F.3d 82, 87 (1st Cir. 2006).

## B.  Did the BIA Err in Finding Removability?

Evelyne argues that the BIA erred in holding that the Government proved by clear and convincing evidence that she was removable, as required by 8 U.S.C. § 1229a(c)(3)(A).  We disagree. Relying on Evelyne's admission to having entered the United States on a nonimmigrant tourist visa and staying beyond the allowed date of December 13, 2001, the BIA found that the Government had discharged its burden of proving removability by clear and convincing evidence.  It further found that Evelyne failed to meet her burden of producing evidence not known to the Government of her authorization to remain.  We see no error in this determination. Once Evelyne admitted her removability, the IJ and the BIA were free to conclude that the Government had established removability. See 8 C.F.R. § 1240.10(c).  Moreover, as the IJ correctly held, the mere fact that Evelyne filed an application to extend her visa did not have the effect of automatically extending it until it was disposed of.  See Samimi v. INS, 714 F.2d 992, 994 (9th Cir. 1983) ("[A]n immigrant is deportable as an overstay when his period of admission expires unless he receives an extension." (emphasis added) (original emphasis removed)); Matter of Teberen, 15 I. & N. Dec. 689, 691 (BIA 1976).  If the rule were otherwise, any alien

could extend her stay for months or even years simply by filing an extension application.

### C. Did the BIA Err in Finding that Evelyne Was Ineligible for Asylum?

Evelyne also argues that the BIA incorrectly determined that she had suffered mere discrimination -- and not persecution -- in Indonesia, that she did not have a well-founded fear of future persecution, and that she was consequently ineligible for asylum. As a prerequisite to asylum eligibility, "an alien bears the burden of establishing that [she] is a refugee." Aguilar-Solís v. INS, 168 F.3d 565, 569 (1st Cir. 1999). A refugee is someone who is unwilling or unable to return to her country of nationality because she has been persecuted or has a well-founded fear of persecution on the basis of one of the grounds in the Immigration and Nationality Act; religion is one such ground. See 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear of future persecution, the applicant must demonstrate "both a genuine subjective fear and an objectively reasonable fear of persecution on a protected ground." Civil v. INS, 140 F.3d 52, 55 (1st Cir. 1988). However, if the applicant makes a satisfactory showing of past persecution, "a rebuttable presumption arises that her fear of future persecution is well founded." Nikijuluw v. Gonzáles, 427 F.3d 115, 120 (1st Cir. 2005).

There is no single definition of "persecution." As this Court has stated: "We know . . . that persecution encompasses more

than threats to life or freedom, . . . but less than mere harassment or annoyance . . . . Between these broad margins, courts have tended to consider the subject on an ad hoc basis." Aguilar-Solís, 168 F.3d at 569-70 (citations omitted). Furthermore, "an applicant qualifies for asylum only when he suffers persecution that is the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct." Nikijuluw, 427 F.3d at 121.

We find nothing in the record that would compel us to disagree with the BIA's determination that Evelyne did not suffer past persecution, and that she lacks a well-founded fear of future persecution. While Evelyne has been the target of some anti-Christian acts -- most notably the ransacking and defacing of her house[2] -- none of these incidents is serious enough to "rise above unpleasantness, harassment, . . . [or] basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Moreover, all of the incidents in question appear to have been sporadic, see Palma-Mazariegos v. Gonzáles, 428 F.3d 30, 37 (1st Cir. 2005) (persecution requires more than sporadic abuse), and perpetrated by private individuals, not persons acting on behalf or with the support of the Indonesian government. Furthermore, although the

---

[2] Contrary to Evelyne's assertion, the IJ did specifically take this incident into account in determining that Evelyne had not suffered past discrimination, although he did not discuss it in detail. I.J. Dec. at 4.

Indonesian government's human rights record is admittedly far from immaculate, the evidence of record is simply insufficient to compel a finding that it is unwilling or unable to control violence against the Christian minority. Finally, the fact that Evelyne's children continue to reside in Indonesia cuts strongly against her claim of a well-founded fear of future persecution. Cf. Aguilar-Solís, 168 F.3d at 573 ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.").

### D. Did the BIA Err in Finding That Evelyne Was Not Deprived of Due Process?

Lastly, Evelyne argues that the way in which the IJ conducted her immigration hearing violated her right to "a reasonable opportunity to present evidence [on her] own behalf." Baires v. INS, 856 F.2d 89, 91 (9th Cir. 1988).[3] From our review of the record, it appears that the IJ took over the questioning of Evelyne to clarify her meandering direct testimony. The BIA found that, despite this conduct, Evelyne had been provided with a full and fair opportunity to present her case. We agree. Although aliens facing removal enjoy the right to a fair opportunity to be heard, Ishak v. Gonzáles, 422 F.3d 22, 32 (1st Cir. 2005), the IJ retains broad discretion over the conduct of immigration proceedings, and may interrogate and cross-examine the alien and

---

[3] We review de novo whether an IJ's conduct has violated due process. Aguilar-Solís, 168 F.3d at 568.

-8-

any witnesses.  <u>See</u> <u>id.</u> at 31; 8 U.S.C. § 1229a(b)(1).  While the IJ here evinced some impatience at the disjointed pace of Evelyne's direct examination, he remained squarely within the bounds of proper behavior in asking the questions he did.  <u>Cf.</u> <u>Ishak</u>, 422 F.3d at 31; <u>Aguilar-Solís</u>, 168 F.3d at 568.  It should also be noted that he gave Evelyne's counsel the opportunity to raise further issues before closing the hearing, and counsel availed himself of this opportunity.  As we have stated in the past, "[a] judge who plays an active, but even-handed, role in keeping the focus of the inquiry sharp is to be commended, not condemned." <u>Id.</u> at 569.

## III.  <u>CONCLUSION</u>

The petition for review is denied.