NOT FOR PUBLICATION IN WEST'S FEDERAL REPORTER

# United States Court of Appeals
## For the First Circuit

No. 08-1231

MALIK ZAFAR MAHMOOD,

Petitioner,

v.

ERIC H. HOLDER, JR.,* ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Robert D. Watt, Jr. for petitioner.
Anthony W. Norwood, Senior Litigation Counsel, Office of
Immigration Litigation, and Gregory G. Katsas, Assistant Attorney
General, for respondent.

September 2, 2009

---

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric
H. Holder, Jr. has been substituted for former Attorney General
Michael B. Mukasey as the respondent.

**PER CURIAM**.  Malik Zafar Mahmood, a native and citizen of Pakistan, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming an order of removal against him.  Mahmood challenges the BIA's denial of his application for withholding of removal, contending that (1) he has demonstrated past persecution, entitling him to a rebuttable presumption of future persecution, and (2) even if he has not established past persecution, he has established a clear probability of future persecution upon his return to Pakistan.  We deny the petition.

## I.

Sometime in August 1999, Mahmood entered the United States in Los Angeles, California, using a British passport that was not in his name.  Over four years later, on January 29, 2004, federal authorities initiated removal proceedings against him.  Mahmood conceded removability, but filed applications for asylum, withholding of removal, relief under the Convention Against Torture (CAT) and, in the alternative, voluntary departure.

At a May 17, 2006 hearing before an immigration judge (IJ), Mahmood testified that when living in his native Pakistan, he experienced persecution as a member of the region's Shia Muslim minority.  In August 1998, while traveling to the mosque with a group of fellow Shias to observe a religious holiday in his home village, Mahmood was shot in the leg by members of the Sunni Muslim majority.  After the shooting, he stayed in the hospital for three

-2-

to four months, during which time he and his mother received threats that if he reported the shooting to the police, Sunnis would attack his mother. Mahmood did not report the shooting. After his release from the hospital, Mahmood stayed with his uncle in another region of Pakistan and with friends. Mahmood did not receive any threats during his stay with his uncle, although his mother continued to receive threats that Mahmood would be killed if he returned to his home village.

Mahmood described several other incidents of harassment. He testified that in 1992 or 1993, members of the Sunni Muslim majority confiscated his father's family business, an ice factory. He further testified that at various times, sometimes several times in a month, Sunni police came to his house to search for weapons based on false reports by Sunni residents; however, the police never arrested or detained Mahmood or charged him with a crime. In his application for asylum, Mahmood stated that one of his brothers had been arrested and tortured by Sunni police, and left Pakistan because of this mistreatment.

Mahmood testified that at the time of the hearing before the IJ, Mahmood's mother and two of his sisters, also Shia Muslims, still lived in Pakistan. A brother, also Shia, had lived in Pakistan until shortly before the hearing. Mahmood did not present any documentary evidence in support of his applications, but instead relied solely on his oral testimony.

At the close of the hearing, the IJ issued an oral decision denying Mahmood's applications for asylum, withholding of removal, CAT protection and, in the alternative, voluntary departure. The IJ determined that the asylum claim was time-barred, concluded that Mahmood had not proven entitlement to withholding of removal or protection under the CAT, and denied voluntary departure as a matter of discretion. On January 23, 2008, the BIA affirmed the IJ's decision in a written opinion. This timely petition for review followed.

## II.

Mahmood challenges only the BIA's denial of his application for withholding of removal, contending that the evidence establishes that he suffered past persecution and there is a clear probability he would suffer future persecution upon his return to Pakistan. Because Mahmood's petition does not assert challenges to the BIA's disposition of his claims for asylum, CAT protection, or voluntary departure, we do not address those claims.

We review the BIA's factual determinations under the "substantial evidence" standard. Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). Under this deferential standard, we accept the BIA's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation marks and citation omitted). The BIA's conclusion must stand unless "any reasonable adjudicator would be

compelled to conclude to the contrary." Boukhtouchen v. Gonzales, 498 F.3d 78, 80 (1st Cir. 2007) (quotation marks and citation omitted). Where the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision as part of the BIA's final decision. Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004).

To qualify for withholding of removal, an alien must demonstrate that his "life or freedom would be threatened in [the removal] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien is entitled to withholding of removal if he shows "a clear probability that, upon repatriation, he will be persecuted on account of a protected ground," that is, that he will "more likely than not" face persecution upon return to his homeland. Rotinsulu v. Mukasey, 515 F.3d 68, 71 (1st Cir. 2008). Alternatively, an alien may qualify for withholding of removal based on a showing that he suffered past persecution on account of a protected ground, triggering a rebuttable presumption that the alien has a well-founded fear of future persecution. Id. at 71-72. In order to amount to persecution, mistreatment "must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Furthermore, persecution "always implies some connection to government action or inaction," Nikijuluw, 427

-5-

F.3d at 120-121 (internal quotation marks and citation omitted); persecution must be "the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct." Id. at 121.

Substantial evidence supports the BIA's conclusion that Mahmood did not satisfy his burden of establishing past persecution. As to the 1998 shooting, Mahmood failed to demonstrate the requisite connection to government action or inaction. Mahmood did not show that the police or other government authorities supported his attackers, and, because he did not report the 1998 shooting to the police, he cannot show that the police were unable or unwilling to control his attackers. See Raza v. Gonzales, 484 F.3d 125, 129 (1st Cir. 2007). Mahmood's remaining claims of harassment, including the confiscation of his father's ice factory in the early 1990s, threats made to himself and his mother, and police searches of his home based on false reports that he possessed weapons, do not compel a finding of past persecution. Because Mahmood failed to establish past persecution, he is not entitled to a rebuttable presumption of future persecution.

Substantial evidence likewise supports the BIA's determination that Mahmood did not establish a clear probability of future persecution. Mahmood's general descriptions of sectarian disputes between Shia and Sunni Muslims in Pakistan are insufficient to establish a likelihood of future persecution. See

id. (holding that evidence of sporadic Sunni-Shiite violence in Pakistan did not compel finding that petitioner would likely face persecution upon removal). Moreover, Mahmood's mother, two sisters, and, until shortly before the hearing, his brother, all of whom are Shia Muslims, continued to live in Pakistan undisturbed. These facts undermine Mahmood's claim that he would more likely than not face persecution upon his return.[1] See Aquilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) ("Without some explanation, the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.").

The petition for review is denied.

---

[1]Mahmood testified that women are not targeted for sectarian violence in Pakistan. Nevertheless, the fact that Mahmood's brother continued to live peacefully in Pakistan suggests that Mahmood could do the same.